[No. 13714.   Department One. — February 2, 1892.]

# WILLIAM EDE, APPELLANT, *v.* THOMAS KNIGHT, RESPONDENT.

93   159
96   407
93   159
107   495
93   159
111   350
93   159
114   158
93   159
117   323
93   159
134   210

STREET ASSESSMENT — EXTENSION OF TIME — STATUTE PART OF CONTRACT — CONSTRUCTION OF CONSTITUTION. — The provisions of the statutes of 1871–72, p. 809, providing for extensions of time of contracts for street-work entered into and became a part of a contract made thereunder, and are not affected by the provisions of section 19 of article XI. of the new constitution.   Such section applies only to contracts made after the taking effect of the constitution.

ID. — CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS. — A valid contract cannot be abrogated by the adoption of a new constitution, any more than it can be by the enactment of a law by the legislature.

ID. — CERTIFICATE OF EXTENSION OF TIME — IMMATERIAL VARIANCE — NUMBER OF RESOLUTION. — The fact that the certificate of extension stated that the additional time was granted in accordance with a resolution, "No. 14518," passed upon a specified day, when in fact the resolution was "No. 14519," does not show such a material variance as will render the extension of time ineffectual.

ID. — FAILURE TO RECORD RESOLUTION. — The failure of the superintendent of streets to cause the resolution of extension to be recorded during the life of the contract does not render the extension ineffectual.

ID. — DIRECTORY PROVISIONS OF STATUTE — RIGHTS OF CONTRACTOR. — The provisions of section 7 of the statute of 1871–72 providing that it shall be the duty of the superintendent of streets, on the passage of a resolution extending the time of a contract for street-work, to cause the same to be recorded, and to specify in the certificate of extension the number of the resolution granting the extension, are designed for the information of the county officers, and are merely directory, and not of the essence of the thing required to be done, and a failure of such officer to perform them will not operate to the prejudice of the contractor.

ID. — PERFORMANCE OF CONTRACT — PRIMA FACIE EVIDENCE — ASSESSMENT, DIAGRAM, AND WARRANT. — The certificate of the city and county surveyor and deputy superintendent of streets, and the assessment, diagram, and warrant signed by the street superintendent, and countersigned by the auditor, are *prima facie* evidence of the fact that the contract has been duly and fully performed.

ID. — DESCRIPTION OF PROPERTY — REFERENCE TO DIAGRAM. — A street assessment which gives the number of the lot assessed, and refers to the diagram for a further description, is sufficient, so far as the designation of the property is concerned, if the two documents, taken together, show a clear description of the property.

ID. — WORK DONE ON STREET CROSSING — OMISSION OF SEPARATE DIAGRAM — ASSESSMENT FOR WORK DONE ON STREET. — The fact that no separate diagram was made, showing the lot assessed for work done on the street crossing, could only prejudice the contractor, and would not injure or prejudice the owner of the lot which should have been charged with such work, but was only charged in fact with work done along the street,

it appearing that all the work called for in the contract had been duly and fully performed.

ID. — DEMAND — RETURN OF CONTRACTOR — EVIDENCE. — The verified return of the contractor, stating that he went upon each of the lots exhibited on the diagram, and publicly demanded on each lot payment of the sum assessed to each, is *prima facie* evidence of the facts stated, and if not disputed, shows a proper demand.

ID. — PLACE OF DEMAND. — If at the time of the demand the contractor stood upon any part of the premises lying within the exterior boundaries of the lot designated in the diagram, the demand is good.

ID. — VALIDITY OF FIRST DEMAND — SECOND ILLEGAL DEMAND. — The fact that the contractor, after demanding the sum due upon the lot designated in the diagram for the grading of the street, demanded on the same lot, without authority, the sum due for grading the crossing, would not affect the validity of the first demand for which the lot was properly assessed.

ID. — SEVERANCE OF VALID AND VOID ASSESSMENTS — SEPARATE DEMANDS. — Where two assessments, one valid and the other void, are severed, and separate demands made, the contractor is entitled to recover the amount of the valid assessment.

ID. — VALIDITY OF CONTRACT — APPEAL — OBJECTION FOR FIRST TIME. — An objection that the contract and assessment were invalid for want of a petition for grading and notice of award cannot be raised for the first time upon appeal, where there was no issue as to the validity of the contract.

APPEAL — FINDINGS — INSUFFICIENCY OF EVIDENCE — REVERSAL OF JUDGMENT — NEW TRIAL. — Where the judgment is reversed for insufficiency of the evidence to sustain the findings, the cause must be remanded for a new trial, and judgment cannot be ordered for the opposite party.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. C. Bates,* for Appellant.

*E. F. Preston,* and *Philip G. Galpin,* for Respondent.

PATERSON, J. — This is an action to foreclose a street assessment lien.

The court found that the work was not completed within the time specified in the contract; that the time within which the work was to be completed was not extended; that no assessment was made to cover the sum due for the work named in the complaint, nor was any

diagram ever made showing the particular lot, or portion of lot, with the number of feet frontage assessed for the work; that the lot described in the complaint was never assessed for the work; and that no public demand was made as required by law, nor was any return made upon the warrant by the contractor stating the nature of his demand.

None of these findings is supported by the evidence.

The contract was entered into on November 28, 1879. The act under which the contract was made (Stats. 1871–72, p. 809) provided for extensions of time. These provisions entered into and became a part of the contract, and were not affected by the provisions of the new constitution. Section 19 of article XI. of the constitution applies only to contracts made after the constitution took effect. (*Ede* v. *Cogswell*, 79 Cal. 278.) A valid contract cannot be abrogated by the adoption of a new constitution, any more than it can be by the enactment of a law by the legislature. (*McCracken* v. *Hayward*, 2 How. 613; *Jefferson etc. Bank* v. *Skelley*, 1 Black, 436; 3 Parsons on Contracts, sec. 555.) *McDonald* v. *Patterson*, 54 Cal. 247, is not in point. That case holds simply that the superintendent of streets cannot be required to enter into a contract, under the act of April 1, 1872, which was awarded after January 1, 1880.

It is claimed by respondent that the attempt to extend the time was ineffectual because the resolution was not recorded, and because the certificate of extension did not state the number of the resolution. Section 7 of the act provides that it shall be the duty of the superintendent of streets, on the passage of such a resolution, "to cause the same to be recorded in the office of the city recorder; . . . . and in issuing a certificate of an extension of time to be recorded, to specify in the same the number of the resolution of the board of supervisors." On February 24, 1880, the board, by resolution No. 14519, granted the contractor sixty days additional time; but in his certificate of extension the superintendent of streets states that the extension is granted in ac-

cordance with resolution No. 14518, passed February 24, 1880. This variance as to the number of the resolution has been held to be immaterial. (*McVerry* v. *Hitchcock*, No. 7981, filed Nov. 24, 1884.)

The objection that one of the resolutions extending the time was not recorded during the life of the contract was considered in *McVerry* v. *Boyd*, 89 Cal. 304, where we held that the important and material thing was the fact that an extension of time had been granted by the board, and that the granting of the certificate and recordation of the resolution by the superintendent were mere ministerial acts, a failure to perform which could not operate to the prejudice of the contractor. This construction of section 7 is supported by *Himmelmann* v. *Reay*, 38 Cal. 165, and by other provisions of the act itself. Section 12 provides that "after jurisdiction to order any work has been obtained, no irregularity in any of the subsequent proceedings shall render any assessment illegal"; and section 28 provides that "this act shall be liberally construed, to carry out the intentions and purposes of this act." The failure of the superintendent to record the resolution, or to state the true number thereof in his certificate, was not jurisdictional. The equality and uniformity of the assessment was in no way affected by it, nor did it operate in any way to the prejudice of the lot-owner. Provisions of a statute like those under consideration are designed for the information of the various officers of the county, and are intended to promote system and dispatch in the prosecution of the proceedings. They are not of the essence of the thing required to be done, and are therefore merely directory. They are matters over which the parties affected by the proceedings have no control, and a failure to perform them should not operate to the prejudice of any one except the officer himself. This is true especially where the statute fixes no time in which the acts are required to be done. (*People* v. *Eureka etc. Co.*, 48 Cal. 146; *Brady* v. *Bartlett*, 56 Cal. 357; *People* v. *Cole*, 70 Cal. 60; *In re Broadway*, 63 Barb. 679; *In re Upson*, 89

N. Y. 73; *Torrey* v. *Millbury,* 21 Pick. 67.)   *Beveridge* v. *Livingstone,* 54 Cal. 56, and other cases cited by respondent, are not in point. There is no doubt that no extension of time can be granted after the time given the contractor has expired, or that an assessment is void unless the work has been performed within the time required, or that where the statute expressly says certain things must be done before any lien attaches to the property, it is necessary to show performance of the acts required. These propositions are supported by the cases referred to, but they have little or no bearing upon the question just considered.

The certificate of the city and county surveyor and deputy superintendent of streets, and the assessment, diagram, and warrant signed by the street superintendent and countersigned by the auditor, are *prima facie* evidence of the fact that the contract has been duly and fully performed. (*Chambers* v. *Satterlee,* 40 Cal. 519; *Brady* v. *Bartlett,* 56 Cal. 357; *Jennings* v. *Le Breton,* 80 Cal. 12.)

The property described in the complaint was properly assessed for the amount due for work done on Seventh Street. The assessment may give the number of the lot, and refer to the diagram for a further description. If the two documents, taken together, show a clear description of the property, the assessment will be held sufficient, so far as the designation of the property is concerned. (*Hewes* v. *Reis,* 40 Cal. 261.) The assessment for grading Seventh Street gives the number of the lot, the number of front feet, the amount assessed, and it refers to the diagram attached for a further description of the lot. The diagram shows the exterior lines of the property as described in the complaint, and the number of the lot given in the assessment. Nothing more could reasonably be required. It is claimed by respondent that there should have been but one assessment for the entire work called for in the contract, each lot being assessed for its proportionate share of the expense of the whole work. This is what was attempted, but to

distribute the burdens it was necessary to have two diagrams, the lot charged with the expense of work on the crossing being a part of the lot charged with the work on Seventh Street. Only one diagram, however, was made, — a diagram of the lot described in the complaint, and charged with the expense of the work done on Seventh Street. No diagram showing the lot assessed for the amount due for work on the crossing was made, but we are unable to see how defendant is injured or prejudiced by the failure to make such a diagram. The contractor is the only person aggrieved thereby. He could have appealed, and had the assessment corrected or a new one made. By his failure to do so, a part of the defendant's land had been relieved of the burden which otherwise would have been put upon it in consequence of the improvements of the crossing. Defendant ought not to be heard to say that this has operated to his prejudice, when it appears that all the work called for in the contract has been duly and fully performed.

The evidence shows that a proper demand was made. The verified return of the contractor states that he went upon each of the lots exhibited on the diagram, and publicly demanded on each lot payment of the sum assessed to each; "that is to say, he so demanded at said time, on each of said lots of land above enumerated, separately, the payment of the sum or sums of money as assessed thereon respectively by said assessment, and where more than one sum was assessed by said assessment on any one of said lots, he demanded payment of such several sums separately, so that each separate item assessed in such assessment was separately demanded by deponent upon the identical lot on which it was by said assessment imposed." This return is *prima facie* evidence of the facts stated (*Deady* v. *Townsend*, 57 Cal. 299), and was not disputed. It is true there is but one lot designated on the diagram, i. e., lot 1; and it is clear, therefore, that only one legal demand could be made. Lot 1 was assessed for the work on Seventh Street, between King and Berry streets, and is liable for the

amount assessed upon it. If the contractor demanded
the sum of $3,486.96 on lot 1, as the return shows he did,
the fact that he afterwards, on the same lot, demanded
without authority the sum of $89.78 — the cost of grad-
ing the crossing — would not affect the validity of the
demand for the $3,486.96, for which lot 1 was properly
assessed. Respondent says, in his brief, that " the dia-
gram attached fails to show upon which lot 1 Buckman
went when he made either demand. (*Dyer* v. *Harrison*, 63
Cal. 449.) He may have demanded the $3,486.96 on that
part of lot 1 upon which it was not a lien, to wit, upon
a lot 1 outside of the 240 feet frontage upon which the
$3,486.96 was a lien." The fault or weakness of this
argument rests in the assumption that there are two lots
described in the diagram, one of which is smaller and
lying within the boundary of the other. This is not
the fact; there is but one; but if it were, the whole of
the land designated in the diagram as lot 1 is liable for
the amount assessed for work on Seventh Street, exclu-
sive of the work done on the crossing, and therefore if
the contractor, at the time he made the demand, stood
upon any part of the premises lying within the exterior
boundaries of the lot designated in the diagram, the de-
mand was good. *Dyer* v. *Harrison*, 63 Cal. 449, cited by
respondent, has no bearing upon this point. In *Parker* v.
*Reay*, 76 Cal. 105, we held that where the assessments —
one valid, the other void — were severed, and separate de-
mands were made, the contractor was entitled to recover
the amount of the valid assessment. (See also. *Boyle* v.
*Tibbey*, 82 Cal. 11.)

It is claimed by respondent that the contract and as-
sessment are invalid because no petition for grading was
filed, as required by section 4 of the act, and because no
notice of the award was given. This objection seems
to have been raised here for the first time. No issue
was made in the court below as to the validity of the
contract. On the contrary, it was treated by the de-
fendant, in his answer, as valid, and was introduced in
evidence by him in connection with the extensions of

time. Under these circumstances, the objection comes too late.

The appellant's contention with respect to the constitutionality and effect of the acts of 1876 and 1878 were considered and determined in *Ede* v. *Cogswell*, 79 Cal. 278, and *Jennings* v. *Le Roy*, 63 Cal. 398.

We are asked to reverse the judgment, with directions to enter judgment in favor of plaintiff. This cannot be done on the findings in this record. (*Dyer* v. *Brogan*, 57 Cal. 235.)

The judgment and order appealed from are reversed, and the cause is remanded for a new trial.

HARRISON, J., and GAROUTTE, J., concurred.