136:85 Fed 32

[L. A. No. 8. In Bank.—September 1, 1896.]

## J. W. HELLMAN, Appellant, v. J. H. SHOULTERS, Treasurer of the City of Los Angeles, et al., Respondents.

STREET IMPROVEMENT BONDS—CONSTITUTIONAL LAW—LEGISLATIVE POWER. The act of March 17, 1891, relative to a system of street improvement bonds, does not conflict with any limitation upon legislative power to be found in the constitution, and is within the scope of legislative power; and the questions of its wisdom and beneficial operation are exclusively for the legislature.

ID.—GENERAL LAW—UNIFORMITY OF OPERATION—ALTERNATIVE MODES OF PROCEDURE.—The act of 1891 is not in conflict with section 11 of article I of the constitution, which provides that all laws of a general nature shall have a uniform operation, but the subject upon which the law is to operate being municipalities in general, the fact that alternative modes of procedure are open to the choice or submitted to the judgment of the council, does not indicate a lack of uniformity.

ID.—DELEGATION OF LEGISLATIVE POWER.—The act of 1891 does not improperly delegate legislative power by vesting in the council power to create and extend the lien of the assessment and to fix the rate of interest, or discretion to pursue one of several schemes for improving streets; but the legislature may delegate all powers of a municipal nature, including the power to improve streets.

ID.—SUFFICIENCY OF TITLE—SINGLE SUBJECT.—The act of 1891 does not express two subjects in the title, merely because it refers to the title of the act of which it is amendatory; but the act being to add an additional part to the Vrooman act in relation to a system of street improvement bonds, which is a matter included within the general subject of the former act, has reference to only one subject.

ID.—DEFINITENESS OF TITLE.—It is not required that the title shall disclose all the details of the act, but it is sufficient if it intelligibly refers the reader to the subject to which the act applies, or which is affected by it.

ID.—REVISION BY REFERENCE TO TITLE — REPUBLICATION—ADDING NEW SECTIONS—AMENDMENTS BY IMPLICATION.—Section 24 of article IV of the constitution, which declares that no law shall be revised or amended by reference to its title, but in each case the act revised or section amended shall be re-enacted and published at length as revised or amended, does not apply to amendments by implication, or to an act which merely adds new sections relating to a named subject, which leaves in full operation all the language of the statute which it purports to amend, and does not purport to amend any section of that act, but affects its operation only by implication from the sections added.

ID.—MUNICIPAL BONDS—SPECIAL FUND—ASSESSMENT AND LEVY OF TAX— INEQUALITY AND HARDSHIP.—The street improvement bonds provided for in the act of 1891, are municipal bonds, in which the city is the obligor, though payable only out of a special fund to be raised by assessment, with personal liability imposed upon the city or upon property owners, and the property liable thereto may be assessed once for all liens under the act, and all taxes may be levied thereon in advance to be paid annually, and the fact that the mode of assessment and levy may be unwise and capable of working inequality and hardship, is not a matter for the court to consider.

ID.—AGREEMENT TO PAY INTEREST—CONTRACT OF CITY—EXTENSION OF TIME TO OWNER—PENALTY FOR DELINQUENCY.—The agreement to pay interest on the bonds is the contract of the city, and the rate is a matter of contract; nor can the owner complain of a provision allowing him an extension of time in which to pay any installment, and as to him the imposition of interest may be supported as a penalty for delinquency.

ID.—INEQUALITY IN RATE OF INTEREST—PRESUMPTION—UNIFORM OPERATION OF LAW.—The rate of interest is one of the terms upon which bids are invited, and presumably enters into the price bid, and if the rate fixed is high, the presumption is that the price will be proportionately low, and there is no such inequality in rate as to affect the uniform operation of the law.

ID.—REASONABLENESS OF ORDINANCE FOR BONDS—OPPORTUNITY TO PAY TAX.—Where an ordinance providing for street improvement bonds affords an opportunity to all taxpayers to pay the tax and thus escape the extension of the lien, this fact bears upon the reasonableness of the ordinance.

ID.—UNIFORM OPERATION OF MUNICIPAL ORDINANCE — CONSTITUTIONAL LAW.—There is no constitutional provision which requires the uniform operation of municipal laws.

ID.—BOND ACT NOT REPEALED — REVISION OF VROOMAN ACT—REPETITION IN NUMBER OF SECTIONS—PRESUMPTION OF MISTAKE.—The bond act was not impliedly repealed by the revision of the Vrooman act, March 31, 1891, in respect of features which were in it when the bond act was passed, and which did not change the Vrooman act in any respect material to the operation of the bond act, nor by the adding of new sections having the same numbers as those of the bond act, but re-

lating to a different subject matter, and it will be rather presumed that the sections were numbered by mistake.

ID.—INJUNCTION AGAINST SALE TO ENFORCE LIEN—DEFECTS IN PROCEDURE—NOTICES—BURDEN OF PROOF—NEGATIVE ALLEGATIONS.—In an action to enjoin a sale to enforce a lien under the bond act, the burden of proof is upon the plaintiff to show defects in the procedure for the issuance of the bonds, and to sustain even negative allegations as to the absence of required notices, and to show that no notice was given, or that the notice given was insufficient.

ID.—PUBLICATION OF NOTICE OF INTENTION—ORDINANCE—STREET LAW—CONFLICT WITH CHARTER.—The street law provides a complete scheme of procedure for street work, and the city charter cannot make a different procedure by requiring more or less publication of notice, and a publication of notice of intention to make a street improvement for two days only as provided by the street law, is sufficient, though it be in the form of the publication of an ordinance, which the city charter requires to be published for ten days before it can take effect, the ordinance being equivalent to a resolution so far as the street law is concerned, and being the basis for the two days' notice provided for by that law, whether effective as an ordinance or not.

ID.—ASSESSMENT PRIMA FACIE PROOF OF NOTICE—BURDEN OF PROOF NOT SHIFTED.—The assessment for a street improvement is *prima facie* proof of notice, so far as necessary to give the council jurisdiction to act, and the mere showing that there was on record proof of notice, does not shift the burden of proof on one assailing the assessment to show that no notice was in fact given, it being the fact, and not the record evidence of the fact that gives jurisdiction.

ID.—NOTICE OF SALE—STATEMENT OF COSTS AND PENALTIES.—The point that the notice of sale published by the treasurer was insufficient cannot be urged for the first time in a petition for rehearing.

ID.—INJUNCTION TO RESTRAIN SALE FOR TAX—IRREGULARITIES OF PROCEDURE—OFFER TO PAY WHAT IS DUE.—A suit in equity for an injunction to restrain a sale for the collection of a tax will not lie to correct mere irregularities in the proceedings, even though they might render the sale void, where the plaintiff makes no offer to pay what is due.

ID.—VALIDITY OF CONTRACT FOR STREET IMPROVEMENT—EXCLUSION OF CHINESE LABOR—RESTRICTION OF HOURS OF EMPLOYMENT—AUTHORITY OF STREET SUPERINTENDENT.—Where no condition was imposed by the council for the exclusion of Chinese laborers or in regard to what should constitute a day's work, the street superintendent has no power to impose such conditions, nor to make a contract other than that authorized by the council and upon which bids were insisted.

APPEAL from a judgment of the Superior Court of Los Angeles County. LUCIEN SHAW, Judge.

The facts are stated in the opinion of the court.

*J. S. Chapman*, for Appellant.

*E. W. McKinstry, C. T. H. Palmer, C. McFarland, W. E. Dunn, John T. Jones,* and *Murphy & Gottschalk,* for Respondents.

VAN FLEET, J.—After a re-examination of this case by the court in Bank, we are satisfied with the views expressed in the opinion of Mr. Justice Temple, filed upon the hearing of the case in Department Two; and that opinion, with the suggestions which we deem it proper here to add in response to the petition for a hearing in Bank, will stand as the opinion of the court.

1. Counsel strenuously contends that the bonds in question cannot be considered as the bonds of the municipality, but that they are, in legal effect, the obligations of the several property owners, or are not the obligations of any one. We cannot see any distinction between these bonds, and those considered in the case of *Lent* v. *Tillson,* 72 Cal. 404, referred to in the opinion in Department. In each case they are made payable only out of a special fund to be raised by assessment on the property benefited; it is expressly declared in each act that the city should in no event be liable upon them, and no personal liability for their payment is by either act imposed on any one. The fact that in one case the bonds are to be paid generally out of a fund raised by assessment on all the property benefited, and in the other case are to. be paid severally by assessment on each particular lot, cannot affect the question of legislative power. The burden upon the property is precisely the same in either case. Liens upon property, where no person is bound to perform the obligation, are common in our law (Civ. Code, sec. 2890), especially in cases of taxation; and in cases of this character no personal liability can constitutionally be imposed upon the property owner. (*Taylor* v. *Palmer,* 31 Cal. 241.)

But, if these bonds could not be considered municipal obligations, the result would be the same. So far as the questions in this case are concerned, the bonds really cut no figure, and might as well be eliminated from the

case.  The effect of the act in question is precisely the same, so far as the property owners are concerned, as if it had provided that any delinquent assessment of fifty dollars or more should be payable in annual installments for such number of years, not exceeding ten, as the council should fix, with interest at a rate to be determined by the council, and that, upon default in the payment of any installment, the property should be sold to pay the assessment.  Since the legislature might constitutionally have provided (as it did provide in the original Vrooman act) that the property should be sold at once to pay the entire delinquent assessment, the owner cannot complain of a provision allowing him an extension of time within which to pay any installment. The only possible question could be as to the authority of the council to fix the rate of interest.  We agree with counsel for respondents that the imposition of interest may well be supported as a legitimate penalty for delinquency, from which the owner may protect himself by paying the assessment when due.  As to fixing the rate of interest, that, as said in the opinion in Department, is a matter of contract merely.  The city council is authorized to contract for the doing of the work, and must, in its resolution of intention, fix the rate of interest.  This is one of the terms upon which bids are invited, and presumably enters into the price bid.  If the rate of interest as fixed is high, the presumption is that the price bid will be proportionally low.  We can, therefore, see no such inequality as to affect the uniform operation of the law, or to distinguish this case from the ordinary class of municipal contracts for street work.

2. As to the publication of the ordinance or resolution of intention, it may be added that appellant's contention is practically disposed of by the case of *Los Angeles* v. *Teed,* 112 Cal. 319.

3. Counsel for appellant contends that the notice of sale published by the treasurer was insufficient, because it did not state the amount of the costs and penalties. This point is made for the first time in the petition for

rehearing, and the respondents have had no opportunity to reply to it. This fact itself would be a sufficient reason for ignoring it. Moreover, it must be remembered that this is a suit in equity for an injunction to restrain a sale for the collection of a tax; and no such injunction will lie to correct mere errors or irregularities in the proceedings, even such as would render the sale void—certainly not where the plaintiff makes no offer to pay what is due. (*Easterbrook* v. *O'Brien*, 98 Cal. 671.)

The judgment and order are affirmed.

McFARLAND, J., GAROUTTE, J., HENSHAW, J., and TEMPLE, J., concurred.

The following is the opinion above referred to rendered in Department Two, April 14, 1896.

TEMPLE, J.—This action was brought to enjoin the sale of property to pay street improvement bonds. The case was submitted to the trial court upon an agreed statement and upon evidence taken and certain stipulations. Judgment was rendered against plaintiff, and the appeal is from the judgment and an order refusing plaintiff a new trial.

The general question involved in the appeal is whether the defendant Shoulters, as treasurer, had authority to sell the property for the purpose mentioned.

That he had no power to sell is contended: 1. Because the act under which the proceedings were had is unconstitutional and void; and 2. On the ground that the statute, if valid, has not been complied with. It is also claimed that incompetent evidence was admitted at the trial over the objections of appellant.

The proceedings for the street improvement, to pay for which the bond in question here was issued, were inaugurated by ordinance passed April 13, 1891, by the city council of Los Angeles declaring the intention of the council to improve Eighteenth street. The procedure was under an act of the legislature passed March 17, 1891, and entitled as follows:

"An act to amend an act entitled 'An act to provide for work upon streets, lanes, alleys, courts, places and sidewalks, and for construction of sewers within municipalities,' approved March 18, 1885, by adding thereto an additional part numbered 4, consisting of sections 38, 39, 40, 41, 42, 43, and 44, relative to a system of street improvement bonds."

Among other things section 40, which that act purports to add to the Vrooman act of 1885, provides that, when the cost of such improvement as estimated by the city engineer will be greater than two dollars per front foot, bonds shall be issued to represent the cost of the work. The bonds shall be serial and extend over a period not to exceed ten years, and payable in equal annual installments, with interest payable semi-annually not to exceed ten per cent per annum. The installments were to be paid to the city treasurer. Under no circumstances was the city to be liable.

The next section provides that when this method of paying for the improvement is pursued, the determination that bonds shall be issued shall be stated in the notice of intention and in the resolution ordering the work, in the resolution of award, and in all notices of the proceedings required. "And also a notice that a bond will issue to represent such assessment of fifty dollars or more remaining unpaid for thirty days after the date of the warrant or five days after a decision of said council upon an appeal, and describing the bonds, shall be included in the warrant provided for in section nine of this act."

The next section provides for the issuance to the contractor of a separate bond representing upon each lot or parcel of land delinquent for fifty dollars or more, the amount of the assessment against the same. The form of the bond is given.

It provides for payment solely out of the fund created by the assessment; for the payment in annual installments with the interest, and that should default be made in any annual payment upon the principal, or in

any payment of interest, the holder is entitled to declare the whole unpaid amount to be due, and have the lot advertised and sold forthwith in the manner provided by law for the sale of land assessed for state and county taxes.

There follows a proviso, "that if any person, or his authorized agent, shall, at any time before the issuance of the bonds, present to the city treasurer his affidavit, made before a competent officer, that he is the owner of the lot or parcel of land in said lot, accompanied by the certificate of a searcher of records that he is such owner of record, and with such affidavit said person notifies said treasurer, in writing, that he desires no bond to be issued for the assessments upon said lot or parcel of land, then no such bond shall be issued therefor," etc. The act further provides that the city treasurer shall report all payments upon the principal due on any bond to the superintendent of streets, who must thereupon credit the same on the record of the assessment; and that the assessment shall be a first lien upon the property affected thereby, and the issuance of the bond shall be conclusive evidence of the regularity of all previous proceedings and the validity of the lien. The act proceeds in the next section to provide that upon any default to pay an installment or interest, if the holder of the bond demands in writing that the treasurer proceed to advertise and sell the lot, "then the whole bond, or its unpaid remainder, with its accrued interest, shall become due and payable immediately."

Appellant's first point is that the act is unconstitutional and void for several reasons.

1. In so far as it attempts to impose a lien to secure a sum of money bearing interest which the owner cannot pay for ten years, it is outside of the functions of government. "If"—it is said—" the legislature could say that upon the happening of certain events, or upon the failure to do certain things, a man's property should be charged with a sum of money bearing a rate of interest

determined by a municipal council, for ten years, it can fix the charge for a hundred years."

This, it is contended, is no part of the power to levy and collect taxes. The power to collect implies a duty on the part of the property owner to pay, and the duty cannot exist unless payment will be received. Therefore, when the statute says that the property owner shall not pay for ten years, but, during that time, shall pay interest at a rate to be fixed by the city council, the process is not one of collection, but to compel the property owner to borrow money and to secure the same by a first lien upon his property against his will. Counsel think such a statute would be declared unconstitutional, though it does not conflict with any express limitation upon legislative power to be found in the constitution. It is, he says, without the scope of governmental power. It is not necessary, in my opinion, to appeal to a restriction so indefinite and intangible. If the case be such as he contends it is, such a proceeding would, to some extent, have the effect of depriving one of both liberty and property without due process of law.

Whenever a municipality issues, bonds which constitute a burden upon property within a certain limited district, it can be argued with some degree of plausibility that the law is forcing upon property owners within the district the obligations of a contract against their will, and has decreed a lien upon their property to secure it. But counsel for appellant concede that the issuance of such bonds under proper conditions is a valid exercise of power. At any rate, it has often been done, and the bonds thus issued held valid.

So far as concerns the question of legislative power, I find it difficult to distinguish this case from that considered in *Lent* v. *Tillson*, 72 Cal. 404.

The bonds issued in this case are municipal bonds. The city of Los Angeles is the obligor. True, the bonds are payable only out of a special fund, and such is usually the case with bonds issued to pay for local improve-

ments.   The incidence of the tax is quite different from
that provided in the case of the Dupont street bonds,
but I cannot see how that fact affects the question of
legislative power.   I do not see why the property may
not be assessed once for all levies under the act, nor ·
why all taxes may not be levied in advance to be paid
annually.   The mode may be unwise and capable of
working inequality and hardship, but that is not a
matter for the court.   If the matter were left to me, I
should say the law is unwise and absolutely incapable
of any beneficial operation, but those are questions ex-
clusively for the legislature.

2. The agreement to pay interest is the contract of
the city, and the rate is a matter of contract.   It is con-
ventional interest.

If these views are correct, they dispose of several
points earnestly discussed by counsel.   I agree with ap-
pellant that the bond cannot be sustained on the ground
that it is a contract made by the property owner, or a
lien imposed by his consent.   If a strong man has a
weak one in his power, and gives his victim the choice
of being kicked or cuffed, he cannot defend his battery
on the ground that the injured man consented.   So in
proceedings to subject property to a burden, *in invitum,*
the exercise of a choice of alternative modes of payment
offered does not prove consent to the taking.

If it were material, I should also agree with appellant
that the act does not provide that all owners may ob-
ject to the issuance of the bond, and thereby prevent
the extension of the lien.   The act does not in terms
provide that any owners may do so, but that only a
person who files a certain affidavit, accompanied by a
certificate, may do so.   No provision is made for those
who own property, but do not have the record title, nor
for lienholders, nor for the case of tenants in common
who do not agree in regard to the matter.   The fact
that all may pay the tax at any time before it becomes
delinquent does have a bearing upon the reasonableness

of the ordinance, and upon the question raised in regard to the fairness of the discrimination between the property owners whose tax is more than fifty dollars, and those whose tax is less than that. An opportunity is afforded to all taxpayers to pay, and thus escape the extension of the lien. There is no constitutional provision which expressly requires the uniform operation of municipal ordinances. Nevertheless, where they unjustly discriminate, they are sometimes declared unreasonable, and therefore void. I do not think it could be said that the discrimination here noticed is unreasonable.

3. It is contended that the law is unconstitutional and void because it violates section 11, article I, which provides that all laws of a general nature shall have a uniform operation. Also, that it violates subdivision 7, section 25, article IV, which prohibits local or special laws "Authorizing the laying out, opening, altering, maintaining, or vacating roads, highways, streets, alleys, town plats, parks, cemeteries, graveyards, or public grounds, not owned by the state." Also, that it is prohibited by the thirty-fifth subdivision of that section, which prohibits local or special laws in all cases where a general law can be made applicable.

Counsel contend that general laws can be made applicable to street improvements, as is shown by the fact that from time immemorial they have been. The lack of uniformity complained of is not altogether, or even chiefly, that the law is made applicable to cities of one or two classes. The act provides that, when the estimated cost of a street improvement shall exceed two dollars per front foot, the city council may, in its discretion, determine that bonds shall be issued to represent the cost of the improvement. They may also fix the rate of interest which the bonds shall bear. This, it is contended, destroys all semblance of uniformity. One street in which the cost exceeds two dollars per front foot may be improved under the rule prescribed in the supplemental act, while the adjoining street is

being improved under the provisions of the Vrooman
act.   Upon still another street, work may be in progress
for which bonds are provided bearing a different rate
of interest.

It is only laws of a general nature which must have
a uniform operation.   And it has been uniformly held
that a law is general which applies to all of a class—the
classification being a proper one—and that the require-
ment of uniformity is satisfied if it applies to all of the
class alike.   In *Smith* v. *Judge Twelfth District*, 17 Cal.
547, it was said: " The word 'uniform' in the constitution
does not mean universal.   The section intends simply
that the effect of general laws shall be the same to and
upon all persons who stand in the same relation to the
law—that is, all the facts of whose cases are substan-
tially the same."   Therefore, I take it, if the subject of
the law is municipalities, and the law operates alike
upon all municipalities upon which it was intended to
operate at all, each requirement that the statute shall be
a general law, and that its operation shall be uniform, is
satisfied.   Street work has always been a matter of
municipal control, and the charters of all cities have
provided something in regard to the method of doing
it.   Where, as in the Vrooman act, the method was
provided in a general law which applied to all cities,
but which did not constitute a specific section of the
charter of any, it was still recognized as a matter of
municipal interest, and as something which might ap-
propriately have constituted a part of such charter.
And, in fact, it was made an essential part of each by
the general law.

In section 6, article XI, of the constitution of 1879, it
was provided that municipal corporations should only be
formed under general laws, and that "Cities and towns
heretofore and hereafter organized, and all charters
thereof framed or adopted by authority of this constitu-
tion, shall be subject to and controlled by general laws."
By section 8 of the same article certain municipal or-
ganizations were provided for, whose charters could be

amended once in two years in a mode specifically indicated in the constitution. Soon after the constitution was adopted the question arose as to whether this very Vrooman act was a general law within the meaning of this provision. On one hand it was contended that laws were not "general," within the meaning of this provision, which only applied to all cities and towns, as to them changing their powers, but that such general laws were only laws general in the sense that they extend throughout the state, and the requirement was that such laws should operate alike within and without municipalities. But this court held in *Thomason* v. *Ashworth*, 73 Cal. 73, that the Vrooman act was a general law within the meaning of that constitutional provision. This ruling has been steadily adhered to ever since. It is now, therefore, the settled law of this state that a statute which changes the powers and duties of municipal officers in important respects is a general law, and has a uniform operation if it is made applicable to all cities or to all of a class. If the Vrooman act was a general law in that sense, then this supplemental act must be so. If the subjects upon which the law is to operate are municipalities, it is obvious that the fact that alternative modes of procedure are open to the choice or submitted to the judgment of the council is no proof of lack of uniformity.

4. It is' objected to the act of the legislature under which the work was done that it is void because it improperly delegates legislative power to the city council, in that it vests in the council the power to create and extend the lien of the assessment, and to fix a special rate of interest.

In contemplation of law the city is the debtor and the rate of interest is conventional. The bond act is not, therefore, a local or special statute regulating the rate of interest on money, nor does it authorize the council to regulate the rate of interest.

As to the matter of the lien, the bond act is no more a local act authorizing, creating, or extending a lien, than

is any act providing a lien for municipal taxes. All such bonds, made payable by taxation upon land in a prescribed district, are, in effect, a lien upon such land. For although the assessments are annual, when made they constitute a first lien, and whoever buys the property must take subject to the burden until the bonds are paid.

It is fair to the counsel for the respondent to say that they do not take the view here advanced, but claim that the extension of the lien and the exaction of interest are penalties for delinquency, and further that the lotowner by failing to pay within thirty days, and by failing to object to the bond in the mode provided, consents to the extension of the lien and the condition as to interest.

It is also suggested that there is a delegation of legislative power, in that the act vests the council with the discretion to pursue one of several schemes for improving streets.

All powers, or at least all powers of a legislative character, exercised by the city council are delegated powers. The right to so delegate all powers which are of a municipal nature is expressly given to the legislature when, by the constitution, it is authorized and directed to provide for municipal corporations. The power to improve streets is admittedly in the category of municipal powers. The entire matter might have been confided to the local council. Here the authority of the local legislature is limited to certain alternative methods—all within the authority which can be so delegated.

*Second.* Appellant further contends that the bond act is void because not passed by the legislature in the mode prescribed by the constitution. It violates, he says, section 24, article IV, because:  1. Two subjects are expressed in the title; 2. No subject is sufficiently expressed in the title; and 3. It amends the Vrooman act, but does not re-enact and publish at length the sections amended.

1. The act, we have seen, purports to be an act to

amend the Vrooman act by adding certain sections thereto relative to a system of street improvement bonds. If the reference to the former act expresses a subject, it is by reference to the title of that act, and if the further subject mentioned in the title is included in, or logically may be so included, then two subjects are not expressed in the title. And such is plainly the case. The title of the former act is stated in the title of the bond act. It is an act to provide for work upon streets, courts, etc., within municipalities. Now, it is quite obvious that a system of street improvement bonds may be one of the modes of paying for work upon streets. The act is, therefore, to add an additional part to the Vrooman act in relation to a system of street improvement bonds. That is a matter which is included within the general subject of the former act. I think the law is not open to the objection. The title plainly says that the proposed law has reference to only one subject, to wit, a system of street improvement bonds.

2. Counsel for appellant says, a title of an act which should simply declare that it was an act relative to a system of street improvement bonds would not express in its title anything of the nature of the bond act. There might be a system of street improvement bonds which did not look to an assessment on the property for their payment. They might be simply municipal bonds. I think in this case the bonds are simply municipal bonds, but, however that is regarded, the title sufficiently expresses the subject of the act. It certainly is not required that the title shall disclose all details of the act. I see nothing in the constitutional provision which requires that the title shall disclose the purpose and scope of the act. It is enough if it intelligibly refers the reader to the subject to which the act applies or which is affected by it.

3. It is claimed that the law is void because it violates that part of section 24, article IV, which declares that "No law shall be revised or amended by reference to its

title, but in each case the act revised or section amended shall be re-enacted and published at length as revised or amended."

But an act is not revised nor a section amended, within the purview of the above inhibition, by an act which adds new sections which leave in full operation all the language of the statute which it purports to amend.

A question somewhat similar was considered in *Earle* v. *Board of Education*, 55 Cal. 492. The act called the Traylor act was "an act to add a new section to the Political Code, to be known as section 1618, relating to the salaries of school teachers in cities having one hundred thousand or more inhabitants." The code provided that such salaries should be fixed by the board of trustees of school districts. The Traylor act directly fixed the salaries in the class of cities named. The objection was made that the act was a special and local law. An attempt was made to show that it was a general law, because it was an amendment to the code, which was general. Mr. Justice Ross, speaking for the court, said that the act was in no sense an amendment to the Political Code; and asked, "If an amendment, what does it amend—the Political Code, or some particular section of it?"

In the title to the bond act it is stated that it is an act to amend the Vrooman act, but also to amend it only by adding new sections relating to a named subject. Now, it has been held that an act which thus adds new sections is not an amendment within the meaning of the restriction. Certainly, the words used by the legislature will not make an act an amendment to a former act when it is in fact not so.

The meaning of the language is explained in the title to the act which shows that it is not necessarily an amendatory act. In my opinion this wording is false, and does no harm. Certainly, there was no injury done by calling attention to the existing law. But counsel says it is in fact what it purports to be, and does amend

the old law in many important respects. Many supposed changes made are mentioned. Mainly, that while the former act does not expressly say so, it sets out a mode of procedure to be followed in such matters, and thus implies that the procedure prescribed is the only mode in which the council can act in such matters. The bond act provides that in certain cases the council may pursue a different mode. It may provide for bonds, and the various notices required differ in that in all of them it must be stated that bonds will issue.

It is evident that if this amends the Vrooman act at all it does so only by implication. It does not purport to amend any section of that act. It simply adds new sections as a whole relating to a subject which is stated. As already said, every word and sentence of the prior act is left in full operation and effect; although if this were otherwise, it would not therefore be an amendment. By implication it affects the operation of the Vrooman act, for it empowers the board in certain cases to adopt an alternative procedure. But, although it may be admitted that in a sense this amends the prior law, it is not within the evils aimed at by the inhibition, and to apply it to statutes which amend others by implication would almost prohibit legislation. To say that every statute which thus affects the operation of another is therefore an amendment of it would introduce into the law an element of uncertainty which no one can estimate. It is impossible for the wisest legislator to know in advance how every statute proposed would affect the operation of existing laws. This matter is fully discussed by Judge Cooley in *People* v. *Mahaney*, 13 Mich. 481. He says: "The mischief designed to be remedied was the enactment of statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty of making the necessary examination and comparison, failed to become appraised of the changes made in the laws. An amendatory act which purported only to insert certain words or to substitute one phrase for

another in an act or section which was only referred to
but not republished, was well calculated to mislead the
careless as to its effect, and was perhaps sometimes
drawn in that form for that express purpose. Endless
confusion was thus introduced into the law, and the
constitution wisely prohibited such legislation. But an
act complete in itself is not within the mischief de-
signed to be remedied by this provision, and cannot be
held to be prohibited by it without violating its plain
intent."

On the other hand, as we have seen, to hold that the
inhibition refers to amendments by implication is to
cause confusion, and unnecessarily to obstruct legisla-
tion. It must be held, therefore, that the provision does
not apply to amendments by implication. See on this
point, *Pennie* v. *Reis,* 80 Cal. 270; *University* v. *Bernard,*
57 Cal. 613; *Ex parte Pollard,* 40 Ala. 100; *Anderson* v.
*Commonwealth,* 18 Gratt. 300; *School Dist.* v. *School Dist.,*
135 Ill. 464; *State* v. *Geiger,* 65 Mo. 313; *State* v. *Han-*
*cock,* 54 N. J. L. 393; *Lockhart* v. *Troy,* 48 Ala. 584;
Cooley's Constitutional Limitations, 180, 181, and
numerous cases cited in the notes.

*Third.* It is contended that the bond act was repealed
before the proceedings in question were here taken.

In fact it is claimed that it had been twice repealed.

1. The bond act was passed March 17, 1891, and took
effect immediately. Appellant claims that it purported
to amend the Vrooman act by adding certain sections
thereto. Precisely what the act was we have considered.
It did purport to add to that act sections numbered
from 38 to 44. At the same session, and on March 31,
1891, the legislature did amend by re-enacting and pub-
lishing in full sections 2, 3, 4, 5, 7, 9, 24, 26, 34, 35,
and 37 of the Vrooman act. This act also took effect
from and after its passage, and expressly repealed all
acts and parts of acts in conflict with it.

Section 3 of the amended act prescribes the procedure
in ordering work done, and, as counsel claims, adds two
new features. The city council may require an estimate

of the cost to be made by the city engineer, and whenever the work is deemed of more than local or ordinary public benefit, or whenever the total estimated cost will exceed the total value of the lots and lands assessed if charged to the frontage, the council may make the expense chargeable upon a district to be formed. Now, it is said, here is a provision for the very same exigency provided for in the bond act, to wit, a case where the cost will exceed two dollars per front foot, and not a word said about bonds.

But these features were already in the Vrooman act when the bond act was passed. The Vrooman act had been amended in that respect in 1889. (Stats. 1889, p. 157.) Counsel contends, however, that this fact makes no difference, for the law as revised did make material changes in the procedure, and does not include the alternative mode mentioned in the bond act. Therefore, the legislature did not wish the continuance of that alternative.

The amendments did not, so far as I can discover, change the Vrooman act in any respect material to the operation of the bond act. The choice of the alternatives was entirely with the council. I am unable to discover in the revision any indication of an intention to repeal the bond act.

Where portions of an act are amended it is not to be considered as repealed and re-enacted as amended, but the portions not altered are deemed to continue. (Pol. Code, sec. 325.)

2. But appellant says that if the bond act was not repealed by the revisory act, it certainly was by another act passed also at the same session of the legislature, March 31, 1891. (Stats. 1891, p. 461.) That act was entitled " An act to amend an act entitled [here inserting the title to the Vrooman act], by adding thereto certain new and additional sections to provide the mode of carrying into effect certain provisions of said act changing grades."

It proposes to amend the original street act by adding

thereto sections 38 to 53 inclusive. The point is, that
these very numbers from 38 to 44 are used in the bond
act. Though both acts treat of matters under the same
general subject—street improvements—still they refer
to very different street work. They do not interfere at
all with each other. They do not amend existing stat-
utes, but each proposes to add new sections. It is not a
case, therefore, where an amended section provides that
section so and so shall read thus. The implication of
repeal, if any, arises entirely from the presumption that
the legislature did not intend that there should be two
sections bearing the same number in the same act.
But this implication is not of itself sufficient to affect a
repeal. It will rather be presumed that the sections
were numbered by mistake.

*Fourth.* It is contended that, admitting the validity
of the act, the bond is void for irregularities in the pro-
cedure. In one respect I hardly understand the mode
in which counsel on both sides have presented these
questions. The action was brought to enjoin a sale
under the bond act on the ground that there was no
valid lien. The act providing for the bonds being
valid, it was incumbent upon the plaintiff to show that
the proceedings were so defective that there was no
valid lien, and that the city council had no right to sell
the land. Numerous matters are averred in the com-
plaint, which, being proven, appellant contends would
show that the bonds are void. Among these are alle-
gations that required notices were not given. No an-
swer was filed, but it was stipulated that all the allegations
of the complaint are deemed denied. The burden was,
therefore, upon the plaintiff all the way through, even
as to the negative allegations that certain necessary no-
tices were not given. The case was tried upon certain
stipulations as to facts. In some parts of the stipula-
tions what notices were given is stated, and in others
not that certain notices were given, but that certain
officials at named dates made affidavits stating the facts
showing due notice if such affidavits were competent to

prove the facts.   Appellant makes the point that these affidavits are not competent to prove what was done. They were not made until long after the orders were made which could be made only after the notices were given.

But if the validity of the procedure did not depend upon the fact that proof was made a matter of record, but upon the fact that due notice was given, then the *onus* was upon the plaintiff to prove no notice was given, or that the notice given was insufficient.   The best we can do is to suppose that the notices which the affidavits tend to prove, were given, and there were no other notices.   If, in any respect, there is a failure in this regard, it is a failure on the part of the plaintiff to make out his case.   The case cannot be treated as though the bondholder was put to proof of the validity of his bond.

The Vrooman act, as amended in 1889, provided that before ordering any work to be done the council shall pass a resolution of their intention to do so, which shall be published and posted for two days as directed in section 34 of the act.   Section 34 provided for the publication in a paper to be designated by the council, and further that "No publication other than that provided for in this act shall be necessary to give validity to any of the proceedings provided for therein."

The city charter of Los Angeles declares (section 39) that ordinances finally adopted shall be published in some daily newspaper, or posted, and until such posting or publishing no ordinance shall be valid.   And in regard to street work, that the notice of intention shall be published at least ten days before it shall take effect.

Counsel contends: 1. The street law may control as to street work, but the charter must control as to the mode in which the council shall express its intention; 2. The mode adopted was by ordinance, and, although a resolution might be passed under the street law, an ordinance must be adopted in the mode provided in the charter.   The street law does not provide for the ordinances; and 3. The two laws are not inconsistent, be-

cause the street law provides for no publication of a resolution in order that it may take effect, but for publication after it has taken effect. Therefore both provisions can stand.

The stipulation shows that the notice was published for two days only.

An ordinance is also a resolution, or, at least so far as this statute is concerned, they are equivalent. (*Los Angeles* v. *Waldron*, 65 Cal. 285.) The street law provides a complete scheme or procedure for street work, and so far as it goes governs. The charter cannot make a different procedure by requiring more or less. Otherwise there would not be a uniform operation of the law for all cities of a class. As to publication, the street law expressly provides that no other shall be necessary for the validity of the procedure.

The ordinance in this regard is in the form suited to the charter of Los Angeles, and provides that the clerk shall cause the same to be published for two days, and thereupon it shall take effect. Counsel says this publication was before it took effect, and the publication required by the street law is after it has become a valid resolution. So far as it affects the proceeding it is a distinction without a difference. Under either view the publication is essential to the validity of the resolution, or at least of proceedings under it, and nothing can be done under it until published. Under either view the resolution is finally passed before publication. Whether we say it is a subsisting ordinance, though it can have no effect as an ordinance, or that it takes effect only after publication, when for the first time it be operative as an ordinance, is a matter of taste.

As each order was made in the procedure authorizing the improvement to be made, the record does not disclose that any proof had been made that the notices had been given which were requisite to give the council jurisdiction to proceed. Does this raise a presumption in a proceeding of this character that they were not given? If the holder of the bond were plaintiff, and it

were held that he must go behind the assessment and show authority to make the bond, such might be the rule. But it has been held over and over that the assessment itself makes a *prima facie* case in favor of its validity. I think, therefore, the laboring oar was with plaintiff to the end, and that merely showing that there was no record proof of notices did not shift the burden. That the fact, and not record evidence of the fact, gives jurisdiction seems to be settled. (*Ede* v. *Knight,* 93 Cal. 162; *In re Newman,* 75 Cal. 213; 7 Am. St. Rep. 146; *Perri* v. *Beaumont,* 88 Cal. 108; *Heinlen* v. *Heilbron,* 94 Cal. 636.)

Looking through this part of the record, however, and conceding that the notices which the affidavits tended to prove were given as stated, and not otherwise, they seem sufficient.

*Fifth.* Appellant next contends that the contract under which the work was done was void, because in it the contractor agreed to employ no Chinese, and no one more than eight hours per day. It is said that these provisions in the contract are void and render the whole contract so, for such restrictions would naturally increase the cost of the work.

That those provisions in our constitution which prohibit the employment of Chinese labor on public works are void, because in conflict with the fourteenth amendment to the federal constitution, is maintained on both sides. We do not find it necessary to affirm either position. Neither in the resolution of intention, nor in the specifications, nor elsewhere, was there a condition in regard to what should constitute a day's work or against Chinese laborers. The condition did not therefore affect the price paid. It is of no consequence to the lot-owner. Neither was it, on the supposition made, legally a part of the contract. Why it was there I do not know. Perhaps the contractor desired it. Possibly such are the prejudices upon the subject that he could procure laborers on better terms with the provision in the contract. At all events the street superintendent had no

power to make a contract other than that authorized by the council, and upon which bids were invited. (*Chambers v. Satterlee*, 40 Cal. 519.)

The judgment and order are affirmed.

McFARLAND, J., and HENSHAW, J., concurred.

Rehearing denied.