[No. 15667. In Bank.—May 3, 1894.]

GEORGE R. FLETCHER, APPELLANT, v. W. L. PRATHER ET AL., RESPONDENTS.

| 102 | 413 |
| 107 | 235 |
| 107 | 496 |
| 102 | 413 |
| 108 | 35 |

CONSTRUCTION OF SEWERS—DRAINAGE OVER PRIVATE LANDS—AMENDMENT OF VROOMAN ACT—SECOND AMENDMENT REFERRING TO ORIGINAL ACT. Section 24 of the act, approved March 18, 1885, commonly known as the Vrooman act, which authorized the construction of sewers in the highways of a city, but not upon private property over which the right of way for a sewer had been secured, and which was amended in 1889 by authorizing cesspools to be constructed, was properly amended a second time by the act of 1893, so as to allow the construction of sewers, "also for

drainage purposes over or through any right of way obtained or granted for such purpose, with necessary and proper outlet or outlets to the same," although the amendment of 1893 referred to the original section 24 of the Vrooman act, and did not refer to it as having been amended by the act of 1889.

ID.—AMENDMENT OF AMENDED SECTION—SOLE REFERENCE TO ORIGINAL ACT—VALIDITY OF STATUTE.—Although an act amending a section of an act repealed is void, yet an amended section of an act takes the place of an original section in the act amended, and the failure of the legislature in amending the same section of the original act a second time specifically to refer to it as having been amended by the first amendatory act, does not effect the validity or constitutionality of the second amendment of the amended section.

ID.—CONSTRUCTION OF CONSTITUTION—RE-ENACTING AMENDED STATUTE AT LENGTH—EFFECT UPON ORIGINAL ACT.—Section 24 of article IV of the state constitution which provides that "no law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length as revised or amended," has for its whole purpose and effect to avoid evils resulting from the mode of amendment which prevailed in the absence of such provision, and was not intended to prevent the section as amended from taking its place by its appropriate number in the original act.

ID.—AMENDED SECTION TAKES PLACE OF ORIGINAL SECTION.—An amended section of an act takes the place of the original section, and the portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment.

ID.—ASSESSMENT FOR SEWER—ADVANCE OF EXPENSES BY CONTRACTOR—WAIVER.—The provision of section 5 of the Vrooman act that the bidder for the construction of a sewer must advance to the superintendent of streets the cost of the publication of notices, resolutions, orders, or other incidental expenses and matters required under the proceedings prescribed in the act, is intended for the benefit of those to whom such expenses were payable, and for the protection of the city, or the superintendent of streets, and is not a matter which can in any way affect those whose property may be assessed for the construction of the sewer; and if all persons entitled to the payment of incidental expenses, in writing, waive their right to have such expenses collected in advance from the contractor, such written waiver does not have the effect to invalidate the contract or the assessment.

ID.—FIXING TIME FOR WORK—POWER OF SUPERINTENDENT OF STREETS.—Within the limits fixed by the statute, the superintendent of streets has the power expressly given him to fix the time for the commencement or completion of the work, and it is not a matter left to be fixed by the agreement of the contractor and superintendent; but the contractor makes his bid in view of the power given to the superintendent and its limitations, and it is only necessary that it should be definitely fixed with the knowledge of the contractor, and the time thus fixed enters into, and becomes a part of, the contract.

ID.—INDORSEMENT UPON CONTRACT BY SUPERINTENDENT—SIGNATURE OF CONTRACT UNNECESSARY.—The time may be fixed either in the body of

the contract, or indorsed upon it with the knowledge of the contractor, and authenticated by the official signature of the superintendent, and in such case the statute and the indorsement makes it part of the contract without the signature of the contractor to the indorsement.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion.

*Fred L. Button*, for Appellant.

The amendment of 1893 is not valid, as it should have either by its terms amended the prior amendatory act of 1889 or, at least, should have referred to the amendatory act by describing the section to be amended as section 24 of the act of 1885, as amended by the act of 1889, in apt words. (*Blakemore* v. *Dolan*, 50 Ind. 194, 204; *Lawson* v. *De Bolt*, 78 Ind. 563, 566; *Hall* v. *Craig*, 125 Ind. 523, 529; *McIntyre* v. *Marine*, 93 Ind. 193; *Feibleman* v. *State*, 98 Ind. 516; *Louisville etc. R. R. Co.* v. *East St. Louis*, 134 Ill. 656, 660; *Wall* v. *Garrison*, 11 Col. 515, 517.) The requirement of section 5 of the Vrooman act that the concontractor "before being entitled to a contract" must advance costs to the superintendent of the streets for incidental expenses is a prerequisite to the contract, and the failure to make such advancement is fatal to the validity of the contract. (Vrooman Act, sec. 5; Stats. 1889, p. 162.) The contract does not fix any time for the commencement or completion of the work, and is therefore invalid. (*Libbey* v. *Ellsworth*, 97 Cal. 316; *Washburn* v. *Lyons*, 97 Cal. 314.)

*Davis & Hill*, for Respondent W. L. Prather, Jr., and *L. J. Welch*, for Respondent W. W. Ackerson, Superintendent of Streets.

The act of March 11, 1893, does not purport to amend a repealed statute. (See Pol. Code, sec. 325; *Dillon* v. *Saloude*, 68 Cal. 267; *Moore* v. *Mausert*, 49 N. Y. 332; *Holbrook* v. *Nichol*, 36 Ill. 161; *Burwell* v. *Tullis*, 12 Minn. 572; *Kamerick* v. *Castleman*, 21 Mo. App. 587;

*Greer* v. *State*, 22 Tex. 588; *Commonwealth* v. *Kenneson*, 143 Mass. 418.) Conceding that the amendatory act of 1889 had the effect of repealing the amended sections of the act of 1885, still it does not follow that the act of 1893 is open to the objection that the statute it purports to amend is a repealed statute. The worst that can be said in that case, is that the designation or description, both in the title and in the body of the act of 1893, of the act thereby amended lacks that precision of expression which greater care would have given it; but such inaccuracy or want of precision in the legislative language does not vitiate the statute. (*People* v. *King*, 28 Cal. 265; *Pue* v. *Hetzell*, 16 Md. 539; *Bradbury* v. *Wagenhorst*, 54 Pa. St. 180; *School Directors* v. *School Directors*, 73 Ill. 249; *Commonwealth* v. *Marshall*, 69 Pa. St. 328.) The failure to advance the costs of incidental expenses did not vitiate the contract, as the person entitled to have the collections made in advance waived their right. (*People* v. *Robinson*, 46 Cal. 94.) The specifications annexed to the contract and referred to therein as a part thereof fixed the time for the commencement and completion of the work, and were sufficient. (*Taylor* v. *Palmer*, 31 Cal. 241.)

*Harry T. Creswell*, for the City and County of San Francisco, Respondent.

HAYNES, C.—Under proceedings had by the board of supervisors of the city and county of San Francisco, a contract was let to the defendant Prather for the construction of a sewer constituting an outlet of a system of sewers in that part of the city known as the Richmond district. The proposed sewer, or a considerable portion of it, is not to be constructed in a public street, but in private lands, the right of way for which has been granted by the owners. Fletcher, the appellant here, is the owner of lands within the assessment district, upon which the cost of constructing the sewer would be assessed, and brought this action to enjoin its construction.

The several defendants demurred to the complaint, the demurrers were sustained, and the plaintiff declining to amend his complaint, judgment was entered dismissing the action, and from that judgment he appeals.

The principal contention of appellant is that the statute under which the work was ordered is invalid.

Section 24 of an act approved March 18, 1885 (commonly known as the Vrooman act), authorized the construction of sewers "upon or in any street, lane, alley, court, or place in such city," but did not enumerate among the places in which sewers might be constructed private property over which the right of way for a sewer had been secured.

In 1889 the legislature passed an act entitled, "An act to amend sections two, . . . . twenty-four, . . . , of an act entitled, 'An act to provide for work upon streets, . . . . and for the construction of sewers within municipalities,' approved March 18, 1885." (Stats. 1889, p. 157.)

The only change made by the amendment of 1889 in section 24 of the original act was made by inserting, in addition to sewers, culverts, etc., authorized to be constructed, the words, "or cesspools."

In 1893 another act was passed entitled, "An act to amend sections two, twenty-four, and thirty-seven of an act entitled, 'An act to provide, for work upon streets, lanes, alleys, courts, places, and sidewalks, and for the construction of sewers within municipalities,' approved March 18, 1885." (Stats. 1893, p. 172.)

In said section 24, as amended in 1893, the following clause was inserted: "And also for drainage purposes, over or through any right of way obtained or granted for such purposes, with necessary and proper outlet or outlets to the same."

Appellant's contention is that by the amendment of 1889, section 24 of the act of 1885 was repealed and ceased to exist as such; and the act of 1893, which by its terms amended section 24 of the original act, was an attempt to amend a section which had ceased to exist; that to accomplish the purpose intended the act of 1893

CII. CAL.—27

should have amended "section 24 of the act of 1885 as amended by the act of 1889."

It is perfectly clear that that which does not exist cannot be amended. If an entire act, or an entire section, is wiped out of existence by a repeal, there is nothing to amend; it is as though the act, or the section, had never been enacted. But it does not logically or necessarily follow that an amendment of a section of an entire act upon a particular subject has that effect. Whether by force of any provision of the constitution, or by settled rules of statutory construction, it has such effect is the question to be considered.

The constitution provides as follows: "No law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length as revised or amended." (Art. IV, sec. 24.)

In the absence of a constitutional provision of this character, a section of an act might be, and often was, amended in one or more of four ways: 1. By striking out certain words; 2. By striking out certain words and inserting others; 3. By inserting certain words; and 4. By adding other provisions. This mode of amendment did not repeal or disturb the existence of the parts of the original section not stricken out; but the objection to this mode of amendment was that it tended to confusion and uncertainty, owing to the difficulty of correctly reading the original section with the amendments —a difficulty which largely increased with each subsequent amendment. This uncertainty not only affected those who were called upon to interpret statutes thus amended, but it begat uncertain and confused legislation, since every legislator, before he could intelligently vote upon proposed amendments, must first know with certainty how the section with all previous amendments read, and what it meant. So far as the original provisions of the section remained unchanged, they were in force from the date of the original enactment, and, so far as they were changed, the new or changed provisions

took effect from the date of the amendment; so far as this is concerned, no reason for any change in the operation of an amended statute is suggested in the provision of the constitution above quoted, nor is any reason for a change apparent. We therefore conclude that its whole purpose and effect is to avoid the evils resulting from the mode of amendment which might and did prevail in the absence of such provision, and that it was not intended that the section as amended should not take its place by its appropriate number in the original act.

The provision in our first constitution in relation to amendment of statutes was the same as that contained in our present constitution; and in *Billings* v. *Harvey*, 6 Cal. 383, in commenting on this provision it was said: "The re-enactment creates anew the rule of action, and even if there was not the slightest difference in the phraseology of the two, the latter alone can be referred to as the law, and the former stands to all intents as if absolutely and expressly repealed."

Section 325 of the Political Code, afterwards enacted, as it is said, to meet the foregoing decision, is as follows: "Where a section or part of a statute is amended, it is not to be considered as having been repealed, and re-enacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment."

In *Dillon* v. *Saloude*, 68 Cal. 270, in speaking of section 3495 of the Political Code, which was amended in 1880 to conform to a provision of the constitution of 1879, after quoting the amendment, it was said: "The words quoted were added to the section, and 'are to be considered as having been enacted at the time of the amendment,' while 'the portions which are not altered are considered as having been the law from the time when they were enacted'" (citing the foregoing section of the Political Code); and, as if to emphasize the mean-

ing of said section 325, section 330 of the same code provides: "An act amending a section of an act *repealed* is void."

Section 24 of the act in question, as amended in 1889, took the place of the original section 24 in the act of 1885, and though the reference to it in the act of 1893 would have been more specific if it had added " as amended by the act of 1889," the intention of the legislature is evident, and the effect is to amend the amended section.

This precise question arose in *Commonwealth* v. *Kenneson,* 143 Mass. 418, where an act passed in 1886 purported to amend certain sections of the public statutes which had been amended in 1885, without any reference to the amendatory act of 1885.   The argument there, as here, was that an amendment of a repealed statute is a nullity.   It was held that the intention of the legislature was plain, and the amendment of 1886 was sustained.

*State* v. *Brewster,* 39 Ohio St. 653, involved the same question.   The *syllabus* upon this point correctly states the decision, as follows: "Where a section of the revised statutes is repealed, and re-enacted in a changed form, a subsequent statute which, in terms, again repeals and re-enacts the original section in still another form, is, as a general rule, to be regarded as a repeal of the section in its amended form, and the section in its last form will take its place in the revision as part of the revised statutes."

In *Oshe* v. *State,* 37 Ohio St. 494, 501, section 6941 was amended March 9, 1880.   After the amendment Oshe was indicted for selling liquor "in violation of law, to wit, in violation of section 6941 of the revised statutes of Ohio," no reference being made to the amendment. The court said: "At the time of the passage of the amended section it took the place of the original section of the revision, and was thereafter the only section 6941 of the revised statutes in force.   The reference in the indictment, therefore, to that section of the revised statutes must be understood as referring to the section

then in force." (See, also, *Brigel* v. *Starbuck*, 34 Ohio St. 280, and cases there cited.)

In *State* v. *Warford*, 84 Ala. 15, it was held that "a statute enacted in 1856, having been amended in 1868, and thereby repealed under the constitutional provisions then in force, a subsequent statute of 1885, amending the statute of 1856 by date and title, but not mentioning the former amendatory law, supersedes and repeals such amendatory law." *Blake* v. *Brackett*, 47 Me. 28, is also directly in point. In *Kamerick* v. *Castleman*, 21 Mo. App. 587, 590, Phillips, P. J., said: "I understand the rule of construction in this respect to be, that where a section of a statute is amended, and the amendment is in such terms that it takes the place of such section, the statute in which the original section stood, as to future acts, is to be regarded as if the amended section was incorporated therein. So much so is this the rule that if, by an act subsequent to the amendatory act, the section of the original statute be repealed, the amendment which stood in its stead is also repealed"; citing *Greer* v. *State*, 22 Tex. 588; *McKibben* v. *Lester*, 9 Ohio St. 627; *Holbrook* v. *Nichol*, 36 Ill. 161, 162; and *State* v. *Ranson*, 73 Mo. 78, 88.

That the intention of the legislature was to amend the section as amended by the act of 1889 is apparent, from the fact that the amendment of 1893 follows the language of the amendment of 1889 as to a provision not contained in the act of 1885, and changes it only by inserting a provision covering the construction of sewers over a right of way acquired over private property.

I have cited a larger number of cases, and quoted more freely from them than may be thought necessary, because the authorities are not uniform. Sutherland in his work on Statutory Construction, section 132, takes the opposite view and says: "An amendment of a section after it has been thus displaced (by amendment) is void."

The cases he cites in support of this statement are,

with one or two exceptions, from the Indiana reports, and these cases are cited by appellant.

The leading case in that state is *Blakemore* v. *Dolan*, 50 Ind. 194. The facts in that case were that in 1865 an act was passed requiring the common council or board of trustees of each incorporated town, at their first regular meeting in April of that year, and biennially thereafter, to elect three school trustees. In 1873 that act was amended, requiring the election at the first regular meeting in April of that year, of three school trustees, who should hold their offices for one, two, and three years respectively, and thereafter one should be elected each year. In 1875 the act of 1873 was amended, requiring the common council or board of trustees at their first regular meeting in *June* of that year to elect three school trustees, who should hold their office for one, two, and three years respectively, and thereafter one should be elected each year. These amendments were regularly made so far as the reference to the acts amended were concerned; in that respect being wholly different from the case at bar. It was there held that by the amendment "the original section is as effectually repealed and obliterated from the statute as if it had been repealed by express words; and it is upon this principle that it has been held that a section which has been once amended cannot be again the subject of amendment, but the section as amended must be amended."

*Goodno* v. *City of Oshkosh*, 31 Wis. 127, cited by appellant, was correctly decided, but it involved another question. There a section of the revised statutes was "amended so as to read as follows," the amendment consisting of an addition constituting an exception to the general provisions of the section. It was held that the provisions of the original section became incorporated in the section as amended; that the repeal of the amended section went to the whole of it, and that under the rule of construction adopted by statute in that state a prior statute was not revived by the repeal of an act repealing such former statute.

Upon this branch of the case, we conclude that the act of 1893, in question here, is a valid and constitutional enactment.

In view of the conclusion reached as to the validity of the statute, it becomes necessary to consider certain points made by appellant touching the regularity of the proceedings under the statute.

Appellant's next point is that under section 5 of the Vrooman act, " before being entitled to the contract, the bidder to whom the award is made . . . . must advance to the superintendent of streets for payment by him, the cost of publication of notices, resolutions, orders, or other incidental expenses and matters required under the proceedings prescribed in this act." (Stats. 1889, p. 162.)

The complaint shows that in this case "all persons entitled to payment of incidental expenses by the superintendent of streets in writing waived their right to have such expenses collected by the superintendent in advance from the contractor, as required by the section quoted."

Every statute must have a reasonable construction, made in view of the purposes of the enactment. This provision was made for the benefit of those to whom such expenses were payable, and for the protection of the city or the superintendent of streets. It is not a matter which can in any way affect appellant, or others whose property may be assessed for the construction of the sewer. It neither increases nor diminishes the amount of the assessment, whether these expenses are advanced by the contractor or paid afterwards. Suppose the persons entitled to these incidental expenses had given the bidder receipts showing payment in full, and these receipts were exhibited to the superintendent of streets, must he still require the bidder to pay to him the amount of these expenses already paid, and, if he fails or refuses to do so, decline to enter into the contract? Or would such direct payment by the bidder to these third persons instead of the street superintendent

make the contract invalid if it should afterwards be entered into? If not, the written waiver above mentioned would not have the effect to invalidate the contract.

It is further urged by appellant that the contract signed by the superintendent of streets and the appellant does not fix any time for the commencement or completion of the work, unless a certain stipulation filed in court as to certain papers annexed to the contract show a substantial compliance with this requirement.

The stipulation referred to is intended to be considered as an amendment to the complaint, and shows that attached to the contract at the time of its execution was a printed copy of the specifications referred to in the body of the contract, in which it was stated that "The work must be done to the satisfaction of the superintendent of streets, highways, and squares, and must be completed within ninety days from the signing of the contract"; and at the end of said printed paper, below the signature of "John A. Russell, clerk," the superintendent, at the time the contract was executed and with the knowledge of Prather, the contractor, wrote the following: "The work to be commenced within fourteen days and completed within ninety days from the date of the contract," and signed the same with his official signature. The stipulation further states that this addition was made and signed with the knowledge of the contractor, and was understood by him to have been done for the purpose of fixing the time of commencing and completing the work. I think this was a compliance with the statute. Section 6 of the act "to provide for work upon streets, etc., within municipalities," approved March 18, 1885 (Stats. 1885, at p. 151), provides that the superintendent of streets "shall fix the time for the commencement, which shall not be more than fifteen days from the date of the contract, and for the completion of all contracts entered into by him, which work shall be prosecuted with diligence from day to day thereafter to completion, and he may extend the

time so fixed from time to time, under the direction of the city council."

Within the limits fixed by the statute, the superintendent of streets has the power expressly given him to fix the time for the commencement and completion of the work. It is not a matter left to be fixed by the agreement of the contractor and superintendent. The contractor makes his bid in view of the power given to the superintendent and its limitations, and it is only necessary that it should be definitely fixed with the knowledge of the contractor, and the time thus fixed then enters into, and becomes a part of, the contract. The time may be fixed either in the body of the contract, or, as here, indorsed upon it with the knowledge of the contractor, and authenticated by the official signature of the superintendent. There is nothing in *Libbey* v. *Elsworth*, 97 Cal. 316, or in *Washburn* v. *Lyons*, 97 Cal. 314, inconsistent with this view. The statute and the indorsement makes it part of the contract without the signature of the contractor to the indorsement.

In view of the conclusions reached it is not necessary to consider whether the city and county of San Francisco was improperly joined as a party defendant.

The judgment should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, it is ordered that the judgment appealed from be affirmed.

BEATTY, C. J.,      GAROUTTE, J.,
McFARLAND, J.,    HARRISON, J.,
DE HAVEN, J.,     PATERSON, J.