[No. C020782. Third Dist. Dec. 13, 1996.]

AMERICAN LUNG ASSOCIATION et al., Plaintiffs and Respondents, v. PETE WILSON, as Governor, etc., et al., Defendants and Appellants.

[No. C020783. Third Dist. Dec. 13, 1996.]

AMERICANS FOR NONSMOKERS' RIGHTS et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, Linda A. Cabatic, Keith Yamanaka, Kathleen Connell, Matt Fong, Dennis P. Eckhart and Thomas R. Yanger, Deputy Attorneys General, for Defendants and Appellants.

Olson, Hagel, Fong, Leidigh, Waters & Fishburn, George Waters and Diane Perlite for Plaintiffs and Respondents.

Catherine I. Hanson, Astrid G. Merghrigian, Christine R. Hall and Lilly Spitz as Amici Curiae.

**OPINION**

**DAVIS, J.**—In these two consolidated appeals, we conclude that a portion of Assembly Bill No. 816 (1993-1994 Reg. Sess.) (Stats. 1994, ch. 195) is a legally invalid legislative enactment. The portion of Assembly Bill No. 816 at issue is an appropriations measure that the defendants (collectively, the State) maintain substantively amends Proposition 99 (the 1988 tobacco tax initiative measure). As we explain, this portion of Assembly Bill No. 816 is at odds with Proposition 99 as originally enacted, and, if this part of Assembly Bill No. 816 is construed as a substantive amendment of Proposition 99, it is at odds with the reenactment rule of article IV, section 9 of the California Constitution. In light of our analysis, we affirm the judgment.

### BACKGROUND

Proposition 99, the Tobacco Tax and Health Protection Act of 1988 (the Act), is an initiative measure approved by the voters in November 1988. (Rev. & Tax. Code, § 30121 et seq.; all further undesignated section references are to the Revenue and Taxation Code unless otherwise noted.) The Act imposes additional taxes on cigarette and tobacco product distributors. (§ 30123.) For example, the Act imposes an additional excise tax of 25 cents

on a standard pack of cigarettes. (§ 30123, subd. (a).) The Act creates a Cigarette and Tobacco Products Surtax Fund in the state treasury and deposits its taxes into that fund. (§ 30122, subd. (a).)

The Cigarette and Tobacco Products Surtax Fund (the Fund) consists of six separate accounts: the health education account; the hospital services account; the physician services account; the research account; the public resources account; and the unallocated account. (§ 30122, subd. (b).) The accounts at issue here are the health education account and the research account. Pursuant to section 30124, subdivision (b), 20 percent of the moneys deposited in the Fund are to be allocated to the health education account and 5 percent are to be allocated to the research account. Pursuant to section 30122, subdivision (b), the health education account is available only for "appropriation for programs for the prevention and reduction of tobacco use, primarily among children, through school and community health education programs"; and the research account is available only for "appropriation for tobacco-related disease research." Under section 30122, subdivision (b), the hospital services account and the physician services account are to be used to pay for medical care for indigents (such care does not have to be tobacco related). (§ 30122, subd. (a).)

The Legislature, through the part of Assembly Bill No. 816 before us, made certain appropriations from the health education account and the research account for the 1994-1995 and the 1995-1996 fiscal years; these appropriations are challenged here by, among others, the American Lung Association and Americans for Nonsmokers' Rights. (Stats. 1994, ch. 195, § 53, subds. (b)(3) & (5), (j), (k), (l), (m), (n), (o), & (p); id. § 54, subds. (b)(3) & (5), (k), (l), (m), (n), & (o).)[1]

For purposes of appellate review, the State has conceded that the challenged appropriations from the health education account and the research account were not spent on the health education programs and research subjects mandated by section 30122, subdivision (b). Instead, these appropriations were used to pay for medical services for indigents, primarily children. Thus, the State has conceded that it has appropriated moneys from the health education account and the research account, through Assembly Bill No. 816, in ways that would violate the Act as passed by the voters. These challenged appropriations have also apparently reduced the percentages of the Fund going to the health education account and to the research account and increased the percentages of the Fund going to the accounts

[1] Assembly Bill No. 816 encompassed many other matters aside from these challenged appropriations. (Stats. 1994, ch. 195.) Those other matters are not at issue in this appeal. For convenience, when we refer to "Assembly Bill No. 816" we will be referring only to that part of Assembly Bill No. 816 that made the challenged appropriations from the health education account and the research account.

covering medical services for indigents; this would violate section 30124, subdivision (b) specifying that 20 percent of the Fund is to go to the health education account and 5 percent to the research account.

■ The State contends, however, that it has substantively amended the Act via Assembly Bill No. 816, and that the challenged appropriations are proper in light of this amendment. Section 30130 allows the Legislature to amend the Act by a four-fifths vote of each house. Assembly Bill No. 816 met this vote requirement. Section 30130 also requires that "[a]ll amendments . . . be consistent with [the Act's] purposes." (§ 30130.)

### DISCUSSION

The challenged language in Assembly Bill No. 816 follows a particular format, an example of which is as follows:

"SEC. 53. For the 1994-95 fiscal year, the sum of three hundred ninety-six million one hundred fifty-eight thousand dollars ($396,158,000) is appropriated from the Cigarette and Tobacco Products Surtax Fund . . . according to the following schedule:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Seventy million eight hundred ninety-nine thousand dollars ($70,899,000) from the Health Education Account to the State Department of Health Services, as follows: [Partly to pay for certain medical care programs for indigents].

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(m) Five million dollars ($5,000,000) from the Research Account [to a medical care program for indigents].

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(p) Eleven million dollars ($11,000,000) from the research account [to another medical care program for indigents]." (See Stats. 1994, ch. 195, § 53, subds. (b)(3) & (5), (j), (k), (*l*), (m), (n), (o), & (p).) Similar language is used in Assembly Bill No. 816 to cover the 1995-1996 fiscal year. (Stats. 1994, ch. 195, § 54, subds. (b)(3) & (5), (k), (*l*), (m), (n), & (o).)

Viewed simply as an appropriations measure, Assembly Bill No. 816 is legally invalid because an appropriations statute naturally must align with the substantive legislation which authorizes the appropriation. As we have

noted, Assembly Bill No. 816 does not align with section 30122, subdivision (b) (specifying how the account funds must be spent) or with section 30124, subdivision (b) (specifying the percentages of the Fund each account is to receive). Sections 30122, subdivision (b) and 30124, subdivision (b) are substantive provisions of the Act authorizing appropriations.

The State argues, however, that Assembly Bill No. 816 constitutes an attempt by the Legislature to amend the Act *substantively* and that this amendment is consistent with the purposes of the Act. The Legislature is permitted to amend the Act, so long as the amendment receives the required four-fifths votes and is consistent with the purposes of the Act. (§ 30130; Cal. Const., art. II, § 10, subd. (c).) In effect, the State argues that Assembly Bill No. 816 has amended the account percentages set forth in section 30124, subdivision (b) by reducing the percentages of the Fund going to the health education and the research accounts and increasing the percentages of the Fund going to the accounts covering medical services for indigents. As the starting point for this argument, the State notes that the Legislature passed Assembly Bill No. 816 by meeting the four-fifths vote requirement of section 30130. This view is supported by language appearing in the legislative history which described Assembly Bill No. 816 as an "Urgency statute. 4/5 vote required (Amends Proposition 99)." (Proposed Conf. Rep. No. 1 Assem. Bill No. 816 (1993-1994 Reg. Sess.) July 6, 1994, p. 1.) As we shall explain, if Assembly Bill No. 816 constitutes an attempt to substantively amend the Act, it runs afoul of the reenactment rule.

The reenactment rule is set forth in article IV, section 9 of the California Constitution, which provides in pertinent part: "A statute may not be amended by reference to its title. A section of a statute may not be amended unless the section is reenacted as amended."

The purpose of the reenactment rule was explained a century ago in *Hellman* v. *Shoulters* (1896) 114 Cal. 136 [45 P. 1057] (*Hellman*). That purpose is to avoid " 'the enactment of statutes in terms so blind that legislators themselves [are] sometimes deceived in regard to their effect, and the public, from the difficulty of making the necessary examination and comparison, fail[s] to become appraised [sic] of the changes made in the laws.' " (*Hellman*, *supra*, 114 Cal. at p. 152; *Huening* v. *Eu* (1991) 231 Cal.App.3d 766, 773 [282 Cal.Rptr. 664].)

As noted, the State argues that Assembly Bill No. 816's redirection of funds amended section 30124, subdivision (b) by reducing the 20 percent allocation to the health education account and the 5 percent allocation to the research account and correspondingly increasing the percentage allocations to the accounts covering medical services for indigents.

However, if one looks for these changes to section 30124, subdivision (b) in the logical spot—in the section itself—they will be disappointed. Section 30124, subdivision (b) reads exactly the same after Assembly Bill No. 816 as it did before Assembly Bill No. 816. In short, section 30124, subdivision (b), with its purported amendments from Assembly Bill No. 816, was not reenacted with those amendments. The reenactment rule "applies clearly to acts which are in terms . . . amendatory of some former act." (*Pennie* v. *Reis* (1889) 80 Cal. 266, 270 [22 P. 176].) Under the State's argument, Assembly Bill No. 816 amended section 30124, subdivision (b) through the stated redirections from the health education and research accounts to the medical programs for indigents. Under this argument, then, Assembly Bill No. 816 was "in terms . . . amendatory of some former act," and as such, in violation of the reenactment rule.

The State contends the reenactment rule applies *only* where a statute is amended by striking out or inserting certain words, phrases or clauses. (See *Fletcher* v. *Prather* (1894) 102 Cal. 413, 418 [36 P. 658]; *Hellman, supra,* 114 Cal. at pp. 152-153; *People* v. *Western Fruit Growers* (1943) 22 Cal.2d 494, 500-501 [140 P.2d 13]; see also *Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989-990 [9 Cal.Rptr.2d 102, 831 P.2d 327].) The key to the reenactment rule's applicability, however, does not turn on a particular method of amendment but on whether legislators and the public have been reasonably notified of direct changes in the law. (*Hellman, supra,* 114 Cal. at p. 152; *Huening* v. *Eu, supra,* 231 Cal.App.3d at p. 773; see *Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078, 1096 [240 Cal.Rptr. 569, 742 P.2d 1290].) In fact, neither *Fletcher* (upon which *Western Fruit Growers* relies) nor *Hellman* takes such a limited approach. *Fletcher* notes that an act "might be" amended in these ways, while *Hellman* mentions these methods simply in passing. (*Fletcher, supra,* 102 Cal. 413; *Hellman, supra,* 114 Cal. 136)

This limited view of the reenactment rule, moreover, flies in the face of public policy, good government and common sense. The underlying purpose of the reenactment rule is to make sure legislators are not operating in the blind when they amend legislation, and to make sure the public can become apprised of changes in the law. (*Hellman, supra,* 114 Cal. at p. 152.) An expressly stated amendatory fragment, which indisputably is within the reach of the reenactment rule, certainly offers more in the way of notice of an amendment than does the cryptic language and uncodified context of Assembly Bill No. 816.

 It is true the reenactment rule does not apply to the addition of new code sections or the enactment of entirely independent acts that impliedly affect other code sections. (*Hellman, supra,* 114 Cal. at pp. 151-153; *Johnson* v. *City of Glendale* (1936) 12 Cal.App.2d 389, 393 [55 P.2d 580].) These

exceptions to the reenactment rule are needed because "[t]o say that every statute which thus affects the operation of another is therefore an amendment of it would introduce into the law an element of uncertainty which no one can estimate. It is impossible for the wisest legislator to know in advance how every statute proposed would affect the operation of existing laws." (*Hellman, supra,* 114 Cal. at p. 152.)

■ But Assembly Bill No. 816 is an appropriations measure *for the Act*; Assembly Bill No. 816 mentions by name the Fund and accounts within it. (Stats. 1994, ch. 195, §§ 53, 54.) By its terms, Assembly Bill No. 816 redirects moneys from the Fund's health education and research accounts to programs paying for medical care for indigents. Against this backdrop, a conclusion that Assembly Bill No. 816 violates the reenactment rule does not disrupt orderly legislative processes or inject the judiciary impermissibly into the legislative realm.

Apparently, there are no California decisions involving an alleged substantive amendment like Assembly Bill No. 816. However, the Washington Supreme Court has dealt with a strikingly similar situation. In *Flanders* v. *Morris* (1977) 88 Wn.2d 183 [558 P.2d 769], an uncodified appropriations bill for a public assistance program added an age restriction to the other statutory restrictions without changing the language of the relevant statute.

The *Flanders* court concluded that the appropriations bill violated Washington's reenactment rule, which stated, like California's: "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." (Wn. Const., art. II, § 37; see *Flanders* v. *Morris, supra,* 558 P.2d at p. 771.) The court in *Flanders* noted that previous decisions had set forth the following reason for the reenactment rule: " 'The [rule] was undoubtedly framed for the purpose of avoiding confusion, ambiguity, and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volume. Such a provision, among other things, forbids amending a statute simply by striking out or inserting certain words, phrases, or clauses, a proceeding formerly common, through which laws became complicated and their real meaning often difficult of ascertainment. The result desired by such a provision is to have in a section as amended a complete section, so that no further search will be required to determine the provisions of such section as amended.' " (558 P.2d at p. 773.)

To this reason the *Flanders* court added another related one: "Another important purpose of Const. art. 2, § 37, not mentioned above, is the necessity of insuring that legislators are aware of the nature and content of

the law which is being amended and the effect of the amendment upon it. . . . [¶] For 37 years, the statutory law of this state has provided for public assistance on the basis of need with no age restriction. The new restriction is clearly an amendment to [the relevant statute], adding to the restrictions already enumerated there. However, the statute will never reflect this change but will continue to read as it always has, with *no age restriction.* One seeking the law on the subject would have to know one must look under an 'appropriations' title in the *uncodified* session laws to find the amendment. The fact that the [appropriations] bill is not codified strikes at the very heart and purpose of Const. art. 2, § 37." (558 P. 2d at p. 774, italics in original, citation omitted.

We could not have said it any better. If Assembly Bill No. 816 amends the percentages set forth in section 30124, subdivision (b) or makes any other substantive amendment to the Act, it violates the reenactment rule.

### DISPOSITION

The judgment is affirmed.

Scotland, J., concurred.

**BLEASE, Acting P. J.**—I concur in the opinion and the judgment.

I write separately to emphasize the speciousness of the state's argument. The state claims that it has amended an initiative statute by passing legislation in conflict with it, a patent absurdity.

The 1988 tobacco tax initiative (the Act) specifies the percentages of the fund it creates that may be appropriated for specified purposes from its accounts. (Rev. & Tax. Code, §§ 30122, 30124.)[1] The state concedes that Assembly Bill No. 816 (1993-1994 Reg. Sess.) appropriates money in amounts that exceed the percentage limitations of section 30124 without amending the section, i.e., it concedes the Legislature violated the Act. Notwithstanding, the state baldly asserts that Assembly Bill No. 816 *amends* the Cigarette and Tobacco Products Surtax Fund because it satisfies the four-fifths vote requirement of the initiative and is consistent with its purposes. (§ 30130.) The state is utterly confused on a simple point of law.

There is only one means of amending a statutory enactment. "A section of a statute may not be amended unless the section is reenacted as amended." (Cal. Const., art. IV, § 9.) This requires that the change be shown in the

---

[1]All references to a section are to the Revenue and Taxation Code.

language of the affected statute. That did not occur here. Whether the Legislature intended to amend section 30124 is immaterial; it did not do so. The road to illegality is paved with such intentions.

Failing an amendment, the state seeks refuge in the doctrine of amendment by implication. The purpose of the doctrine is to resolve conflicts in enactments of equal legal status, not to provide another means of "amendment." It expresses the rule that a later enactment may prevail over an earlier, conflicting enactment of the same legal status in respects the conflict. The rule does not apply where the later enactment is legally subordinate to the earlier enactment, that is, where a conflict is ruled out by the superior legal status of the earlier enactment.

The Act has superior legal status for two independent reasons. First, the Act creates the tobacco tax fund and directs the amounts which may be appropriated from the fund. Second, since the Act was enacted as an initiative statute, which has superior legal status to ordinary legislation, no legislative enactment may conflict with it. (Cal. Const., art. II, § 10, subd. (c).) The sole means of change is an amendment which meets the requirements of the Act. (*Ibid.*; § 30130.)

Scotland, J., concurred.