[No. C035688. Third Dist. June 15, 2001.]

REBECCA CRADDOCK et al., Plaintiffs and Appellants, v.
KMART CORPORATION, Defendant and Appellant.

## COUNSEL

John P. Kelley for Plaintiffs and Appellants.

Mitchell, Brisso, Delaney & Vrieze, Nancy K. Delaney and William F. Mitchell for Defendant and Appellant.

## OPINION

**SIMS, J.**—Plaintiffs Rebecca Craddock and Ronald Craddock sued defendant Kmart Corporation for personal injury and premises liability arising out of an accident suffered by Rebecca Craddock at a Kmart store. Plaintiff Ronald Craddock, Rebecca's husband, alleged loss of consortium. (We sometimes refer to the plaintiffs by their first names for clarity.)

After jury trial, plaintiffs won a special verdict. The jury found that Kmart's negligence was 90 percent responsible for Rebecca's injuries and that her negligence was 10 percent responsible. The jury awarded Rebecca total damages (without reducing the award for comparative fault) of $1,158,000 ($728,000 in economic damages and $430,000 in noneconomic damages); it also awarded Ronald $25,000 for loss of consortium. Reducing Rebecca's award by the percentage of Rebecca's comparative fault, the trial court entered judgment for Rebecca for $1,042,200 and for Ronald for $25,000.

Kmart moved for judgment notwithstanding the verdict (JNOV) and for new trial, partly based on the claim that a special instruction was erroneous. The trial court denied the motions.

Kmart also moved to set aside and vacate the judgment and to enter a new and different judgment as to Ronald, alleging that his award of loss of consortium must be reduced by the percentage of Rebecca's comparative fault. The trial court granted this motion and entered an amended judgment reducing Ronald's award to $22,500.

Kmart appeals from the judgment; plaintiffs cross-appeal from the reduction of Ronald's award. Finding both the appeal and the cross-appeal without merit, we shall affirm the (amended) judgment.

## Factual and Procedural Background

Viewed most favorably to the verdict, the evidence showed the following:

While shopping at a Kmart store with her mother-in-law in Redding, California, on June 23, 1996, Rebecca was looking for towels. Rebecca walked down an aisle where it formed a T-intersection with another, started to turn, and looked up at an overhead directory sign to locate the linen department.

Store employees were constructing a display bin in the middle of the aisle and metal brackets were lying on the floor. Kmart's store manager conceded that objects lying on aisle floors create a hazard and that the brackets should not have been left on the floor. He also acknowledged that shoppers do not always watch their feet as they walk down the aisles. Other Kmart employees testified that the display bin could have been assembled after hours.

Employee Michelle Sisk was positioned in the aisle to warn shoppers of the hazard, but she was facing the wrong way to see Rebecca approaching. The store had done nothing else to secure the area or signal the hazard to shoppers.

While looking up at the directory sign, Rebecca stepped on a bracket and started to slip. Trying to right herself, she twisted violently. Michelle Sisk said "be careful," then pushed Rebecca upright to steady her.

A few days later, Rebecca noticed low back pain, which was diagnosed as a herniated disk requiring surgery. Following surgery, the disk reherniated (a known risk), and a second surgery was performed. In consequence, Rebecca suffered permanent disabling nerve damage (also a known risk of the procedure she underwent), causing severe chronic pain and preventing her from ever returning to her occupation as a registered nurse or from performing any other gainful employment. Rebecca was 46 years old at the time of her accident.

## Discussion

### The Appeal

██ The jury received the standard BAJI instructions defining negligence, the duty of a premises owner as to the maintenance and management

of the premises, and the duty of a plaintiff to use due care for her own safety. (BAJI Nos. 3.10, 3.11, 3.12, 3.50, 8.00, 8.01, 8.02.)[1] Over defendant's

---

[1]BAJI No. 3.10, as given, read: "Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under circumstances similar to those shown by the evidence. [¶] It is the failure to use ordinary or reasonable care. [¶] Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. [¶] You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual, nor the exceptionally skillful one, but a person of reasonable and ordinary prudence."

BAJI No. 3.11 (1994 rev.), as given, read: "One test that is helpful in determining whether or not a person was negligent is to ask and answer the question whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he or she would have foreseen or anticipated that someone might have been injured by or as a result of his or her action or inaction. If the answer to that question is 'yes', and if the action or inaction reasonably could have been avoided, then not to avoid it would be negligence."

BAJI No. 3.12 (1991 rev.), as given, read: "The amount of caution required of a person in the exercise of ordinary care depends upon the conditions apparent or that should be apparent to a reasonably prudent person under circumstances similar to those shown by the evidence."

BAJI No. 3.50 (1992 rev.), as given, read: "Contributory negligence is negligence on the part of a plaintiff which, combining with the negligence of a defendant, contributes as a cause in bringing about the injury. [¶] Contributory negligence, if any, on the part of the plaintiff does not bar a recovery by the plaintiff against the defendant but the total amount of damages to which the plaintiff would otherwise be entitled shall be reduced in proportion to the amount of negligence attributable to the plaintiff."

BAJI No. 8.00 (1994 rev.), as given, read: "The plaintiff Rebecca Craddock also seeks to recover damages based upon a claim that the defendant Kmart Corporation was the owner and/or lessor of certain premises, and was negligent in the maintenance or management of such premises. [¶] The essential elements of a claim for negligence against an owner and/or lessor of premises are: [¶] 1. The defendant was the owner and/or lessor of premises; [¶] 2. The defendant was negligent in the management of such premises; [¶] 3. The negligence of the defendant was a cause of injury, damage, loss or harm to the plaintiff."

BAJI No. 8.01 (1997 rev.), as given, read: "The owner and/or lessor of premises is under a duty to exercise ordinary care in the maintenance or management of the premises in order to avoid exposing persons to an unreasonable risk of harm. A failure to fulfill this duty is negligence. [¶] Ordinary care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. [¶] This duty of care is owed only to those persons whom the owner and/or lessor, as a reasonably prudent person under the same or similar circumstances, should have foreseen would be exposed to a risk of harm. [¶] You shall determine whether a person under the same or similar circumstances as the defendant Kmart Corporation should have foreseen that the plaintiff Rebecca Craddock would be exposed to an unreasonable risk of harm. If you so find, you are instructed that the defendant Kmart Corporation owed plaintiff Rebecca Craddock a duty of care and you should determine if the defendant exercised such care, considering all the surrounding circumstances shown by the evidence."

BAJI No. 8.02 (1994 rev.), as given, read: "A risk of harm is unreasonable if the degree of the risk outweighs the usefulness of a person's conduct. In balancing risk against usefulness you must consider the extent to which a person's objectives can be adequately advanced or protected by another and less dangerous course. A particular risk is unreasonable if such person reasonably can accomplish the same result by other conduct which involves less opportunity for harm to others. [¶] In determining whether any act or omission by a person

objection, the trial court also gave the following special instruction requested by plaintiff:

"When a store is open for business, one who enters it to purchase some commodity or service does so at the implied, if not the express, invitation of the owner of the store. Upon that owner the law places the duty of exercising ordinary care so as not unnecessarily to expose the patron to danger or accident and, to that end, to keep in a reasonably safe condition the aisles, passage ways and general store premises made available for the patron's use in [and] which the latter is expressly or impliedly invited to use.

"In judging the conduct of the parties, you may consider the fact that the attention of persons who visit public stores ordinarily is attracted by the display of wares offered for sale and may be more or less absorbed by the transactions which they have in mind. You may consider whether the defendant anticipated that fact with ordinary care in the exercise of the duty herein mentioned. You may also consider whether the plaintiff did or did not share that ordinary experience of store visitors, and if so, what effect that fact had on her conduct in relation to the cause of the accident, if any."

On appeal, as it did on its motion for JNOV or new trial, defendant contends that this instruction was legally erroneous and unsupported by the evidence. We disagree.

The language of the instruction derives almost word for word from an instruction approved in *McKenney v. Quality Foods, Inc.* (1957) 156 Cal.App.2d 349, 358-360 [319 P.2d 448]. As the court there noted, the legal principles underlying the instruction derive mainly from *Tuttle v. Crawford* (1936) 8 Cal.2d 126 [63 P.2d 1128]. In *Tuttle v. Crawford,* our Supreme Court stated: "That it is the duty of storekeepers to keep the floors of their premises safe for those who must pass over them in the transaction of their business must be conceded. *The fact that the attention of persons who visit public markets is attracted by the display of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the necessity of exercising care to the end that the floor spaces and aisles allotted to the use of customers should be made safe and kept fit for such purpose.* [¶] 'It is the rule in California that the keeper of a public place of business is bound to keep his premises and the passageways to and from it in a safe condition, and must use ordinary care to avoid accidents or injury to those properly entering upon his premises on business.' [Citations.]" (*Tuttle v. Crawford, supra,* 8 Cal.2d at p. 130, italics added; see also *Neel v.*

constituted an unreasonable risk of harm, you should consider all of the surrounding circumstances shown by the evidence."

*Mannings, Inc.* (1942) 19 Cal.2d 647, 652 [122 P.2d 576] [" 'One who, during business hours, lawfully enters a store to purchase goods does so at the implied invitation of the owner [citation], upon whom the law imposes the duty of exercising ordinary care and prudence to keep the aisles and passageways of the premises, in and through which by their location and arrangement a customer in making purchases is induced to go, in a reasonably safe condition so as to not unnecessarily expose him to danger or accident. [Citations.]' "]; *Wills v. J. J. Newberry Co.* (1941) 43 Cal.App.2d 595, 602-603 [111 P.2d 346].)

Defendant cites no authority holding that these decisions no longer state the law and we have found none. Instead, defendant asserts that the principles underlying the special instruction have been superseded by *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] and *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. Defendant also asserts that the instruction's expression "not *unnecessarily* to expose the patron to danger or accident" (italics added) imposes a higher duty than reasonable care on the store owner and invites a finding of liability for anything it did without necessity that led to the customer's injury, regardless of whether the customer exercised reasonable care to avoid injury. We do not agree with defendant.

Defendant barely makes an argument as to *Rowland v. Christian*. Defendant says that the instruction approved in *McKenney v. Quality Foods, Inc.,* and given in this case "was last discussed by an appellate court . . . in the context of care owed to an 'invitee'—before the general language of negligence with respect to premises liability was embraced by the California Supreme Court in *Rowland v. Christian* . . . ." However, defendant does not develop this proposition. Nor does defendant cite authority—not even *Rowland v. Christian* itself—holding that *Rowland v. Christian* supersedes all case law which speaks of invitees. We need not consider an argument so poorly articulated. (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521].) In any event, the argument lacks merit.

As our Supreme Court said recently, " '[t]he proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . .' (*Rowland* v. *Christian*[*, supra,*] 69 Cal.2d 108, 119. . . .) This requires persons 'to maintain land in their possession and control in a reasonably safe condition. [Citations.]' (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)" (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156 [60 Cal.Rptr.2d 448, 929 P.2d 1239].)

Nothing in the special instruction placed upon defendant any duty other than reasonable care. The instruction is not at odds with *Rowland v. Christian.*

Defendant appears to argue that *Li v. Yellow Cab Co., supra,* 13 Cal.3d 804, invalidates the special instruction because that instruction "was given [in *McKenney v. Quality Foods, Inc., supra,* 156 Cal.App.2d 349] in the context of an 'all or nothing' verdict for plaintiff[,]" i.e., at a time when contributory negligence was a complete defense. However, defendant does not explain how *Li*'s institution of comparative fault in California negligence law invalidates this instruction. Nothing in its language is aimed at negating the plaintiff's comparative fault or could reasonably be so construed. In any event, the trial court instructed the jury on comparative fault[2] and we presume the jury followed that instruction, as well as the instruction it was given to consider all the instructions as a whole. (See *People v. Adcox* (1988) 47 Cal.3d 207, 253 [253 Cal.Rptr. 55, 763 P.2d 906].) In fact, the jury found that plaintiff Rebecca was 10 percent at fault.

██ Finally, defendant objects to the instruction's language "unnecessarily . . . expose the patron to danger or accident" because "it may be inferred from this that an occupant of premises may only avoid liability when exercising ordinary care to do what is *necessary.*" We think not. The instruction plainly tells the jury in the same sentence that an occupant of premises need exercise only "ordinary care" to "keep [the premises] in a reasonably safe condition" for patrons. A reasonable jury would not understand from this language that the defendant had a duty to do only what was necessary because such a duty would far exceed "*ordinary* care" and maintenance of "a *reasonably* safe condition." Nor would the jury understand from this instruction that the plaintiff had no duty to use due care for her own safety, because: (1) The instruction does not say so; and (2) The jury was expressly instructed elsewhere that she had that duty. (See fn. 1, *ante.*) But so far as defendant acted negligently by constructing a display bin in a busy aisle during shopping hours rather than after hours without customers present, and by leaving metal brackets on the floor rather than picking them up immediately, the instruction properly invited the jury to consider whether that unnecessary exposure of customers to danger violated the standard of ordinary care.

Defendant separately contends that there was no evidentiary basis for the special instruction. We do not agree.

Defendant asserts: (1) plaintiff offered no testimony that she was "distracted" by a display of merchandise; (2) there was no evidence that the

---

[2]The trial court gave BAJI No. 3.50 (1992 rev.); see footnote 1, *ante.*

directory signs were deficient in any manner; and (3) there was no legal basis for excusing plaintiff's conduct because she was availing herself of appropriate signage. These points are immaterial because they have nothing to do with the special instruction. It does not use the word "distracted." Nor does it impose liability for "deficient" directory signs. Nor does it concern itself with whether the signage was "appropriate."

All the evidentiary basis needed for the instruction is that plaintiff was a customer in defendant's store, that the store had wares on display, and that the store had aisles, passageways, and general premises which customers traversed in order to inspect those wares. These facts were undisputed here. Everything else in the instruction is couched only in terms of possibilities. Nothing in the instruction directs the jury it must find any of those possibilities true or supported by the evidence.

The trial court did not err in giving the special instruction.

### The Cross-appeal

■■■■ On defendant's motion, the trial court reduced Ronald's damages for loss of consortium by 10 percent, the percentage which the jury found Rebecca's negligence contributed to her accident. Plaintiff contends the trial court erred by doing so. We disagree.

The trial court acted under Civil Code section 1431.2 (hereafter section 1431.2), which codifies Proposition 51's change in the law on joint and several liability for noneconomic damages. That statute provides in pertinent part:

"(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount. [¶] . . . [¶]

"[(b)](2) For purposes of this section, the term 'non-economic damages' means subjective, non-monetary losses including . . . loss of consortium . . . ."

As the parties agree, case law before the enactment of Proposition 51 held that a spouse's recovery for loss of consortium could not be reduced by the

proportion of negligence attributable to the injured spouse. (*Lantis v. Condon* (1979) 95 Cal.App.3d 152, 155-156 [157 Cal.Rptr. 22].) However, contrary to the parties' representations, the effect of Proposition 51 on this area of law is not a question of first impression. In *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1810-1811 [34 Cal.Rptr.2d 732], Division One of the Fourth District held a wife's claim for lack of consortium was subject to reduction for her husband's comparative fault under section 1431.2.

Plaintiff acknowledges section 1431.2 (but not *Hernandez*), but contends that Family Code section 783 (formerly Civ. Code § 5112), which deals with injury to a spouse by a third party tortfeasor, is more specific and therefore controlling. *Hernandez* does not discuss the possible effect of Family Code section 783. We shall do so.

■ Where a general statute conflicts with a specific statute, the specific statute controls the general one. (*Tapia v. Pohlmann* (1998) 68 Cal.App.4th 1126, 1133 [81 Cal.Rptr.2d 1].) " 'It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].)" (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].)

■ Family Code section 783 provides: "If a married person is injured by the negligent or wrongful act or omission of a person other than the married person's spouse, the fact that the negligent or wrongful act or omission of the spouse of the injured person was a concurring cause of the injury is not a defense in an action brought by the injured person to recover damages for the injury except in cases where the concurring negligent or wrongful act or omission would be a defense if the marriage did not exist."

In the present context, we think that section 1431.2, not Family Code section 783, is the more specific statute. Damages for loss of consortium are available only to married persons. (*Elden v. Sheldon* (1988) 46 Cal.3d 267, 277-279 [250 Cal.Rptr. 254, 758 P.2d 582].) Section 1431.2 expressly mentions damages for loss of consortium, whereas Family Code section 783 does not. Because section 1431.2 expressly provides for the calculation of damages for loss of consortium, a specific kind of damage suffered by married persons, section 1431.2 is the more specific statute and controls here.

The trial court correctly reduced Ronald's award for loss of consortium under the compulsion of section 1431.2.

## DISPOSITION

The (amended) judgment is affirmed. The parties shall bear their own costs on the appeal and cross-appeal.

Callahan, J., concurred.

**BLEASE, Acting P. J.**—I concur in the judgment and in the opinion, except as to the cross-appeal. I would uphold the primacy of Civil Code section 1431.2 over Family Code section 783, not by reason of the special over the general rule, but because section 1431.2, as the product of an initiative, is the superior law and prevails thereby over any conflict between it and section 783. (Cf. *American Lung Assn. v. Wilson* (1996) 51 Cal.App.4th 743, 752 [59 Cal.Rptr.2d 428] (conc. opn. of Blease, Acting P. J., with Scotland, J., conc. therein.))

On July 2, 2001, the opinion was modified to read as printed above. The petition of appellant Kmart Corporation for review by the Supreme Court was denied September 19, 2001. Chin, J., did not participate therein.